PEOPLE v BROACH

Docket No. 55004. Submitted August 20, 1981, at Detroit.—Decided November 3, 1981.

Oran Broach was charged with possession of heroin and possession of a firearm during the commission of a felony. Prior to trial, he moved to suppress certain evidence seized during a search and to quash the information charging him with the crimes. Detroit Recorder's Court, Warfield Moore, Jr., J., denied the defendant's motion. He appeals by leave granted. *Held:*

The trial court properly denied the defendant's motion. The evidence in question was seized by the police following a "patdown" search based on probable cause to believe that the defendant was involved in criminal activity and that the search was necessary to neutralize any threat of physical violence to the officers.

Affirmed.

SEARCHES AND SEIZURES — "PATDOWN" SEARCHES — PROBABLE CAUSE.

Evidence obtained by police officers during a "patdown" search of a person present in a private residence entered pursuant to a valid search warrant may support the issuance of an information charging that person with a crime and may be introduced at a subsequent trial of the person, notwithstanding the fact that the person charged was not named in the search warrant, where the search of the apartment occurs within minutes of the occurrence of the sale of a controlled substance within the apartment and which is known to the police and the police have probable cause to believe that the person searched was involved in the illegal activity and that the search of the person is necessary to neutralize any threat of physical violence to the officers.

*Frank J. Kelley,* Attorney General, *Robert A.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 419.

68 Am Jur 2d, Search and Seizure §§ 41 *et seq.,* 58.

Nature of interest in, or connection with, premises searched as affecting standing to attack legality of search. 78 ALR2d 246.

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

Defender Office—Legal Aid and Defender Association of Detroit (by *John F. Royal),* for defendant.

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN, JJ.

PER CURIAM. Defendant was arrested on September 12, 1980, and charged with possession of a controlled substance, MCL 333.7403(2)(a); MSA 14.15(7403)(2)(a), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant's pretrial motion to suppress seized evidence and quash the information was denied by the trial court on October 13, 1980. Defendant appeals to this Court by leave granted.

On September 12, 1980, the Detroit Police secured a search warrant for apartment B-2, 3245 West Chicago, Detroit. Prior to obtaining the warrant, the police had conducted a surveillance of the apartment and had made a number of narcotics purchases there. The only person named in the warrant was Curtis Talley. At around noon of that day, seven officers went to execute the search warrant. Initially, Officer Delbert Jennings walked up to the apartment building, knocked on a lower window, and made a marijuana purchase from Curtis Talley. Within five minutes, the officers entered the apartment pursuant to the warrant.

Officer Sedrick Miller approached defendant and conducted a patdown search. Miller stated that it was department procedure to search for offensive weapons when executing search warrants. The

officer felt an object during the search and found a
.38-caliber revolver in defendant's possession.
Moreover, as he patted defendant's jacket, a
pocket pushed out, revealing a clear plastic bag
containing foil packets and a white powder. The
substance later was found to be heroin. Miller
indicated that prior to the patdown search defen-
dant answered all questions asked of him and did
whatever he was told. Defendant did not attempt
to leave the premises. In searching the apartment
itself, the officers discovered about two pounds of
marijuana.

Defendant argues for suppression of the evi-
dence on the basis of *Ybarra v Illinois,* 444 US 85;
100 S Ct 338; 62 L Ed 2d 238 (1979). In *Ybarra,* the
police obtained a search warrant authorizing the
search of a tavern and a particular bartender
suspected of possession of heroin. When the officers
entered the tavern, they advised the 9 to 13 cus-
tomers present that they were going to conduct a
"cursory search for weapons". As defendant
Ybarra was patted down, the officer felt "a ciga-
rette pack with objects in it". The officer patted
down other customers and then returned to seize
the cigarette pack, later found to contain six tin-
foil packets of heroin.

The Supreme Court held the search to have
been unconstitutional and reversed Ybarra's con-
viction for possession of heroin. The Court ob-
served that at the time the warrant was issued the
police only had probable cause to believe that the
particular named bartender was violating the law.
Further, when the police entered the establish-
ment, there was nothing in Ybarra's appearance
or action to provide probable cause to believe that
he had committed any offense. The Court wrote:

"[A] person's mere propinquity to others indepen-

dently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v New York,* 392 US 40, 62-63 [88 S Ct 1889; 20 L Ed 2d 917 (1968)]. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect. to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth. Amendments protect the 'legitimate expectations of privacy' of persons, not places. See *Rakas v Illinois,* 439 US 128, 138-143, 148-149 [99 S Ct 421; 58 L Ed 2d 387 (1978)]; *Katz v United States,* 389 US 347, 351-352 [88 S Ct 507; 19 L Ed 2d 576 (1967)]." *Id.,* 91.

Finally, the Court concluded that the search could not be justified as a reasonable frisk for weapons under the doctrine of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), since the police did not have a reasonable belief that Ybarra was armed and dangerous. *Ybarra, supra,* 92-93.

We believe the present situation is distinguishable from that in *Ybarra.* The search in *Ybarra* took place in a public tavern where innocent bystanders would be expected to gather. Ybarra, from all outward appearances, was a typical bar patron. An informant had told the police that the bartender at the tavern possessed suspected heroin, but there was no indication that the tavern itself was the location for drug sales. In the present case, the location searched was a private apartment. Defendant's presence there can be presumed to have been at the permission of codefendant Talley. More importantly, the search and patdown here took place within five minutes of a marijuana purchase through one of the apartment windows. Given the exclusive nature of the prem-

ises and the proximity in time to an actual drug sale, the searching officers had probable cause to believe that defendant was involved with the illegal activity within the apartment.

An analogous factual situation was presented in *State v Broadnax,* 25 Wash App 704; 612 P2d 391 (1980). There, a search warrant was issued for a Seattle residence based upon information that within the preceding 24 hours a resident of the dwelling had offered narcotics for sale there. The defendant, Stephen Thompson, was in the house when the warrant was executed and a patdown search of Thompson revealed a heroin-filled balloon. The Washington Court of Appeals upheld the search, distinguishing the *Ybarra* case:

"In this case, Thompson was not searched because of mere propinquity to a bartender in a tavern where he was a customer. Rather, he was one of two adults in a house where narcotics had probably been sold within the preceding 24 hours by a person residing therein. It would be unwise to suggest that the police should ignore the individuals present on the assumption that they were unarmed and uninvolved." *Id.,* 707.

The instant case stands on even clearer footing. The controlled substance sale took place only moments before the search of the apartment. We believe that the circumstances presented to the officers were sufficient to have supported a reasonable belief that defendant was a participant in the narcotics trade and was armed and dangerous. The patdown search was a reasonable precaution to neutralize any threat of physical harm to the officers. *Terry, supra,* 24. Therefore, we hold that the trial court acted correctly in denying defendant's motion to suppress the seized evidence and quash the information.

Affirmed.