John J. LIPPERT, Appellant,

v.

STATE of Texas, Appellee.

No. 13-81-176-CR.

Court of Appeals of Texas,
Corpus Christi.

Nov. 4, 1982.

Rehearing Denied Dec. 2, 1982.

Discretionary Review Granted
March 9, 1983.

Michael Fricke, Port Lavaca, for appellant.

Dan W. Heard, Crim. Dist. Atty., Port Lavaca, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from a conviction for possession of methamphetamine with intent to deliver. After trial by jury, the Court assessed punishment at ten years imprisonment, probated.

The sole issue on appeal is whether the trial court erred in overruling the appellant's motion to suppress the evidence (methamphetamine) found in appellant's pocket during what he claims was an illegal search and seizure.

The evidence shows that on March 27, 1981, police officers armed with a warrant to search for methamphetamine entered a residence on Virginia Street in Port Lavaca. Appellant was found in the kitchen of the residence shortly after the three investigat-

ing officers had found two men and one woman surrounded by narcotics and drug paraphernalia in a front bedroom. The evidence fails to conclusively show whether appellant was present in the house when the search began or whether he entered the premises afterward. A woman, Kathy Wise, who was found alongside the appellant, testified at the suppression hearing that she and appellant had just entered the house when they encountered the police. One officer testified, however, that the police were still securing the scene when appellant and the woman were discovered, and that he did not know if the two had just come in or if they had been hiding in the house.

After being discovered, appellant was frisked and told to sit in the living room with those individuals who had been found in the bedroom. After fifteen to twenty minutes, a decision was made to transport all the suspects to the police station for questioning. Before appellant was placed in a waiting squad car, a transporting officer patted him down and found a hard case in appellant's front shirt pocket which contained the methamphetamine appellant claims was illegally discovered.

The dispositive question in this case is whether the detention of the appellant and the subsequent search violated his constitutional right to be secure against an unreasonable search and seizure of his person.

At the outset, appellant contends that he did not specifically come within the provisions of the search and arrest warrant. The warrant commands the search of "each suspected party named in said affidavit." The affidavit, after describing the place to be searched, reads: "SAID SUSPECTED PLACE IS IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING NAMED PARTIES (HEREINAFTER CALLED "SUSPECTED PARTY," WHETHER ONE OR MORE), TO–WIT: Sherry Fourtner, and Mike (last name unknown—but sound is phonetically similar to "Euling"), and person or persons whose names, identities and descriptions are unknown to affiant."

■ The warrant authorizes the arrest of those persons named in the affidavit. Appellant, John Lippert, is not named in the affidavit. It is the law in Texas, however, that a warrant need not always include the name of the offender, for if his name is unknown, it is sufficient to describe him, and if his identity is unknown, it is sufficient if the warrant authorizes the arrest of unnamed persons for whom probable cause exists to believe are in possession of narcotic drugs. See *Walthall v. State,* 594 S.W.2d 74 (Tex.Cr.App.1980); *Dawson v. State,* 477 S.W.2d 277 (Tex.Cr.App.1972).

■ The arrest warrant and the supporting affidavit in this case do not contain any reference to appellant or any information which would constitute probable cause that appellant possessed methamphetamine. Moreover, we think it important to note that the affiant police officer testified that he knew the appellant as "Bucko," knew the type of car appellant drove, and had observed appellant at the house on Virginia Street while on surveillance duty. Thus, it appears to us that appellant was not one of those persons who were "in charge of and controlled" the described premises whose "names, identities, and descriptions are unknown to affiant." We agree with appellant that the arrest warrant did not specifically authorize his arrest.

■ We now turn to the question of whether the officers were authorized to search appellant under the circumstances of this case due to his presence in the house at the time the warrant was executed. The State relies upon various Texas cases which hold that an officer executing a valid search warrant has the right and duty to search persons found on the premises during the execution of a warrant. *Brown v. State,* 498 S.W.2d 343 (Tex.Cr.App.1973). See also *Martinez v. State,* 504 S.W.2d 897 (Tex.Cr. App.1974); *Guerra v. State,* 496 S.W.2d 92 (Tex.Cr.App.1973); *Johnson v. State,* 440 S.W.2d 308 (Tex.Cr.App.1969); *Hernandez v. State,* 437 S.W.2d 831 (Tex.Cr.App.1968). The State also relies on case law holding that there is no meaningful distinction be-

tween persons found on the premises by officers when they initiate their search and persons who enter the premises after the search begins. *Rice v. State,* 548 S.W.2d 725 (Tex.Cr.App.1977). Two fairly recent United States Supreme Court decisions, however, cause some doubt on the continuing validity of those cases relied on by the State. See *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In fact, the Court of Criminal Appeals in *Rodriguez v. State,* 614 S.W.2d 448 (Tex.Cr.App.1981) indicated that the Court's earlier holdings in *Hernandez,* supra, and *Johnson,* supra, were "no longer the law."

In *Ybarra,* police officers executing a search warrant for a public tavern detained and searched all of the customers who happened to be present. In holding the search unlawful, the Court said that each patron was clothed with constitutional protection against an unreasonable search or an unreasonable seizure, and that although the warrant gave the officers authority to search the premises and the bartender, who was specifically named in the warrant, it gave them no authority to invade the constitutional protections possessed by each individual in the tavern. The Court further said that a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.

More specifically, the Court said:

"Where the standard is probable cause, a search and seizure of a person must be supported by probable cause particularized with respect to the person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be."

The Court cited with approval the following dicta from *United States v. DiRe,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) in which it was held that a person in a sus-

pected car would not be searched merely because another in the car was suspected of criminal activity or because the contraband sought could easily be concealed on the person:

"The Government says it would not contend that, armed with a search warrant for a residence only, it could search all persons found in it. But an occupant of a house could be used to conceal this contraband on his person quite as readily as can an occupant of a car. Necessity, an argument advanced in support of this search, would seem as strong a reason for searching guests of a house for which a search warrant had issued as for search of guests in a car for which none had been issued. By a parity of reasoning with that on which the Government disclaims the right to search occupants of a house, we suppose the Government would not contend that if it had a valid search warrant for the car only it could search the occupants as an incident to its execution. How then could we say that the right to search a car without a warrant confers greater latitude to search occupants than a search by warrant would permit?"

In light of *Ybarra,* and having decided that the arrest warrant did not specifically authorize the arrest of the appellant, we now must determine if the appellant's presence (or his arrival), at the house authorized his detention and search, under the facts and circumstances of this case.

We agree that *Hernandez* and *Johnson* are no longer the law to the extent in which they conflict with *Ybarra.* The present case, however, is distinguishable from *Ybarra* in that this search occurred in an exclusive residence shortly after investigating officers had discovered contraband in the bedroom.

While we have found no Texas case on point since the Supreme Court's decision in *Ybarra,* we have found a variety of decisions in other jurisdictions interpreting that case in situations similar to that here.[1]

**1.** Supporting validity of such a search, we have

found; *People v. Broach,* 111 Mich.App. 122,

While there appears to be a split in authority, we think it the better rule to authorize the search where the individual has some connection with the premises or with the illegal activity. In this case, the police had information that the residence was being used to sell narcotics, and unlike the public tavern in *Ybarra,* the premises searched in this case were private. The appellant's presence can be presumed to have been at the permission of the occupants. Given the exclusive nature of the premises, the authorized presence of the police officers in the house, the discovery of contraband, and the appellant's known reputation as a drug user and his prior visits to the house,[2] the searching officers had probable cause to believe that appellant was involved with the on-going illegal activity within the house, and were justified in both frisking appellant for weapons and searching his person.[3]

In the recent case of *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) the Supreme Court held it was proper to detain the occupant of a home pending its search. The Court said:

"In assessing the justifications for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the articulable facts supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation."

Strictly speaking, *Summers* authorized the detention only of an occupant during the execution of a valid search warrant. We see no reason to distinguish between an occupant and a non-occupant when the facts and circumstances of the case show the non-occupant to have some particular relation to the place or persons in the place being searched. The presence of the appellant and his known prior relationship with the house and its occupants justified a detention of the appellant.[4]

Appellant's ground of error is overruled, and the judgment of the trial court is affirmed.

---

314 N.W.2d 544 (Mich.App.1981); *State v. Ferrell,* 274 S.C. 401, 266 S.E.2d 869 (S.C.1980); *State v. Brooks,* 51 N.C.App. 90, 275 S.E.2d 202 (N.C.App.1981); *State v. Haugee,* 402 So.2d 1216 (Fla.App.1981); *State v. Broadnax,* 25 Wash.App. 704, 612 P.2d 391 (Wash.App.), affirmed on remand, 29 Wash.App. 443, 628 P.2d 1332 (Wash.App.1981). In support of appellant's position, we have found *United States v. Clay,* 640 F.2d 157 (8th Cir.1981); *State v. Peters,* 5 Kan.App. 44, 611 P.2d 178 (Kan.App. 1980); *State v. Myers,* 55 Or.App. 370, 637 P.2d 1360 (Or.App.1981); *Bell v. State,* 608 P.2d 1159 (Okl.Cr.1980). See also *United States v. Cole,* 628 F.2d 897 (5th Cir.1980).

**2.** One officer testified that he had seen the appellant's car at the house on several occasions during his surveillance.

**3.** For the rationale of permitting a search for narcotics of persons entering during the search see 2 W. LaFave, Search and Seizure, 14 § 4.9 (1978).

**4.** We do not find it significant that the officers who searched appellant testified that appellant was *not* under arrest at the time of the search and that they were only looking for weapons and not narcotics. The record shows that appellant was told he could not leave. He was thus under arrest. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1960). That the officers found narcotics while looking for weapons is of little import.