711 P.2d 1231

**STATE of Arizona, Appellant,**

v.

**Manuel S. CARRASCO, Jr., Appellee.**

**No. 1 CA–CR 7804.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 26, 1985.

Motion for Reconsideration Denied Nov. 1, 1985.

Thomas E. Collins, Maricopa Co. Atty. by Joel M. Glynn, Deputy Co. Atty., Phoenix, for appellant.

Ross P. Lee, Maricopa County Public Defender by Arthur G. Hazelton, Deputy Public Defender, Phoenix, for appellee.

FROEB, Judge.

The state appeals from the order granting the defendant's motion to suppress the evidence. We affirm.

Police officers had a valid search warrant for the residence and person of Billy Higgins. The defendant was apparently a visitor at the residence when the officers arrived to execute the warrant. Defendant was one of four adult males encountered by the officers upon entry to the residence. The four were hand-cuffed and checked for weapons immediately upon entry and then seated on a couch for the duration of the search. During the search, officers found a .38 caliber revolver and loaded 12–gauge shotgun in the residence. They also found a quantity of cocaine and records showing sales of cocaine. The individual named in the search warrant, Billy Higgins, was found to possess $781.00 in United States currency. A narcotics-detector dog arrived two hours after the initial detention of the four men. The dog "alerted" to defendant and a search of his person revealed a bag of narcotics and defendant was arrested.

. This matter was decided by the trial court on the basis of the pleadings and oral arguments of counsel. There was no evidentiary hearing and the issues were decided on the basis of the "facts" recited in the pleadings. The court found that the handcuffing and detention of the defendant for two hours was the functional equivalent of an arrest and that his seizure "was not supported by probable cause." The court accepted as true, for the purpose of deciding the motion to suppress, that after two hours the police brought a trained narcotics-sniffing dog to the apartment where the defendant was located and that the dog "alerted" to the defendant. There was no dispute that "alerting" meant that the dog noted the presence of narcotics on the defendant.

The trial court held that the initial detention of the defendant was unreasonable, that it was the equivalent of an arrest, and that the arrest was not supported by probable cause. Therefore, the trial court concluded, the evidence seized subsequent to the defendant's detention should be suppressed because it was the result of the detention.

The state argues that the initial detention of the defendant in the Higgins' residence did not violate his constitutional right against unreasonable seizure. Both in response to the motion to suppress and on appeal, the state argues that when police officers execute a search warrant at a residence, they may detain any person found within that residence until they have

executed the search warrant. The state also argues that although the initial detention of the defendant was a "seizure" within the meaning of the fourth amendment, it was justified as an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Furthermore, the state argues that it was not unreasonable for the police officers to maintain the *status quo* while they conducted the systematic search of the Higgins' residence. It argues that if the search of the residence took two hours to complete, it was not unreasonable for them to detain the defendant for that time period. The state also argues that the use of handcuffs during the investigatory detention did not elevate the seizure to the level of an arrest. Finally, the state argues that the narcotics dog provided the probable cause necessary to justify the arrest and search of the defendant two hours after his investigatory detention commenced.

The dispositive issue in this case is whether the detention of defendant on the premises during the course of the search was an unreasonable seizure. If it was, then the search of the person of defendant thereafter was illegal, even though the narcotics dog furnished probable cause for the search itself.

> The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. (citations omitted) "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person," (citation omitted) and the Fourth Amendment requires that the seizure be "reasonable." As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. (Citations omitted)

*United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607, 614–615 (1975).

The traditional justification for detention is probable cause. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed:2d 824 (1979). However, in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court established a limited exception to the probable cause requirement and ruled that the *occupant* of premises being searched could be detained for the duration of the search. The Court relied upon a reasonableness standard balancing the severity of the individual intrusion against certain government interests. Unlike previous exceptions involving only brief detentions, *see Terry v. Ohio* (investigatory stops) and *Brignoni-Ponce* (stops at the Mexican border), *Summers* permits an extended detention. We must determine whether *Summers* applies in the instant case and whether defendant's detention was reasonable under the circumstances.

■ Mere presence at a place for which the police have a search warrant does not *alone* constitute grounds to detain. *Lippert v. State,* 664 S.W.2d 712 (Tex.Cr.App. 1984) (*reversing Lippert v. State,* 653 S.W.2d 460 (Tex.App.1982), a decision which had extended *Michigan v. Summers* to a non-occupant of a residence to justify an extended detention); 1 LaFave & Israel, *Criminal Procedure* § 3.4 (1984); *State v. Broadnax,* 98 Wash.2d 289, 654 P.2d 96 (1982). As noted in *State v. Broadnax:*

> In other words, "mere presence" is not enough; there must be "presence plus" to justify the detention or search of an individual, other than an occupant, at the scene of a valid execution of a search warrant. (citations omitted) It is well established that a warrant authorizing the search of a premises does not also extend to authorize the *search* of an individual found on the premises. (citations omitted) (emphasis supplied).
>
> \* \* \* \* \* \*
>
> A person's mere presence at the scene of suspected criminal activity does not entitle police officers to search that individual. Neither may the police seize an individual, other than an occupant of the premises, so as to make him available in

case probable cause is later developed to arrest him. *State v. Broadnax*, 98 Wash.2d at 301–302, 654 P.2d at 103–104.

 The decision in *Summers* was founded on the logical conclusion that an occupant's control over premises which are the subject of a search warrant provides a sufficient connection with the suspected illegal activities so that it is reasonable to detain *that* individual for the duration of the search. *See also, State v. Broadnax* and *Lippert v. State.* Additionally, the court in *Summers* pointed to the practicality of having the occupant nearby to unlock doors, etc., and otherwise help expedite the search. Thus, while an "occupant" may be detained during the execution of a residential search warrant, this limited exception to the probable cause requirement cannot reasonably be extended to those merely present on the premises, since the foregoing justifications are inapplicable to a visitor. *State v. Broadnax* and *Lippert v. State.* Having determined that "mere presence" does not justify the arrest or detention of a person, other than the occupant, at a residence lawfully being searched, we look next to determine whether there were any facts presented which would, nevertheless, justify the detention of defendant in the present case and render it reasonable under the circumstances. *Cf. United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (although a case dealing with seizure of travelers' luggage, balancing test applied to determine if seizure of property was reasonable under the circumstances).

Defendant was not shown to have any connection with the weapons, drugs, money and records discovered on the searched premises and there is no showing the officers had grounds to suspect such a connection. No circumstances were presented to give rise to a reasonable suspicion defendant was involved in criminal activity. There is no articulable reason given why defendant was detained for two hours while the search progressed. Based on this record, we hold the trial court correctly ruled the search of defendant following his detention was the product of an unlawful seizure and the evidence found on his person should be suppressed.

The order is affirmed.

CORCORAN, J., concurs.

EUBANK, Judge, specially concurring:

The record here is very thin. It contains no testimony by the police officers concerning their reasonable, articulable suspicion that the defendant has been, is, or is about to be engaged in criminal activity. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). *See also United States v. Hensley*, 469 U.S. ——, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

We would have to close our eyes to reality not to recognize the organized crime aspect of the illicit cocaine traffic involved *sub judice.* We also recognize that exigent circumstances may exist in attempting to execute a search warrant under the instant facts. However, the United States Supreme Court has placed the burden of justifying the restraint on the police. This record lacks any substantial support for the State's appeal.

I specially concur in the opinion.