793 P.2d 1126
**The STATE of Arizona, Appellee,**

v.

**Roberto Rojo MONTOYA, Appellant.**

**No. 2 CA–CR 89–0379.**

Court of Appeals of Arizona, Division 2, Department B.

March 15, 1990.

Review Denied June 26, 1990.*

* Corcoran, J., of the Supreme Court, was not present and did not participate in the determination of this matter.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Eric A. Bryant, Phoenix, for appellee.

Ralls & Bruner, P.C. by Sean Bruner, Tucson, for appellant.

## OPINION

LACAGNINA, Judge.

Roberto Rojo Montoya appeals his conviction for possession of a narcotic drug, the court's suspension of his sentence, and the imposition of four years' probation. He argues that the trial court abused its discretion in denying his motion to suppress the drugs found in his vehicle following his detention during the execution of a search warrant. We agree and reverse.

Department of Public Safety (DPS) Sargeant Randy Young began surveillance of a residence located at 402 S. Country Club at the request of Sargeant Gary Richardson, because Richardson was attempting to get a search warrant for the residence. At 11:48 a.m., when Young began the surveillance, he saw a white Lincoln Continental at the residence, which Motor Vehicle Department records showed was registered to Jorge Luis Uriarte Guerrero, who was also listed on utility records as living at that address. Young never saw who was driving the Lincoln. The unidentified person left in the Lincoln at 12:05 p.m., returned at 12:20, and left again at 1:37 p.m. When Young left the residence at 2:28 p.m., the Lincoln had not returned. When Young returned to the residence at 4:15 p.m., he learned that an individual later identified as Guerrero had been stopped driving a gold 1983 Ford and admitted to possession of cocaine.

The search warrant was executed at 4:30 p.m. DPS Agent Rudy Turner entered the residence, secured it, and then was instructed to park his vehicle south of the residence and watch for "[a]ny vehicles turning down the alley north towards the residence" and that "upon seeing such a vehicle that [he] thought might be destined for that house, to radio the officers in the house." The Lincoln arrived at 5:30 p.m., and Turner radioed the officers in the house that a vehicle had turned down the alley and was headed toward the house.

Turner's partner, Deputy Sheriff Kenneth Slawinski, searched the residence, and after that was assigned to security. He stayed in Turner's vehicle down the street and waited for other cars to come to the residence. When the Lincoln arrived, it was stopped by other officers, and the driver, later identified as Montoya, was taken out at gunpoint, handcuffed and taken inside the residence. Slawinski was then instructed to drive the vehicle into the back yard of the residence "[t]o keep the alley from being blocked and keep other persons that might arrive from being warned that [they] were there." While he was in the vehicle, he observed a folded dollar bill in the open ashtray.

DPS Agent Paul Nixon and Sargeant Young brought the Lincoln into the back yard, closed the gates and searched the vehicle. Nixon said that Slawinski had told him to look into the ashtray when he searched the vehicle. When they searched it, they found the folded dollar bill, opened it up and saw some white crystalline powder later determined to be cocaine. The bill was folded in a "snow seal"—folded over like an envelope with the cocaine secured inside the paper.

■ The parties stipulated that the search warrant described only the house, not any vehicles. The state also concedes that there was no probable cause to arrest Montoya when he was stopped,[1] but essentially argues that the detention was valid under *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), because the circumstances of the search gave the officers a reasonable apprehension for their personal safety, and because the officers reasonably assumed that Montoya was an occupant of the house, and was therefore permissibly detained during the execution of the warrant. We disagree.

The *Terry*[2] "stop and frisk" rule recognizes the narrow authority of police officers who suspect criminal activity to "make limited intrusions on an individual's personal security based on less than probable cause." *Michigan v. Summers*, 452 U.S. at 697–98, 101 S.Ct. at 2592. However, that suspicion must be based on articulable facts, and a detention based on anything less will be ruled unreasonable. *Id.* at 699 n. 9, 101 S.Ct. at 2592 n. 9. In this case, the police did not have any information which either connected Montoya to the residence (or arguably to the Lincoln, because the earlier driver was unidentified and not described), or which gave them any reasonable suspicion that he was presently armed and dangerous. The officers concede they had only a generalized fear based on experience that violence "sometimes accompanies Search Warrants for narcotics." This is not enough. There is no indication by the Court in *Summers* that the narrow authority given to police in *Terry* has been broadened to include the automatic right to stop and frisk in the execution of a search warrant. Such a rule would render *Terry* meaningless, which the *Summers* Court did not intend. In *Summers*, as in *Terry*, the Court has allowed limited intrusions by the police where such intrusions can be justified by special law enforcement interests. Our holding today recognizes that limited authority.

■ The state further argues that the detention was permissible under the rule announced in *Summers*. The Supreme Court held that "[a] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 704–05, 101 S.Ct. at 2595. Such a detention, according to the Court, serves three primary law enforcement interests: 1) preventing flight, in the event incriminating evidence is found; 2) facilitating the orderly completion of the search; and 3) minimizing the risk of harm to officers.

---

1. Because of our decision that Montoya was not permissibly detained, we need not address his argument that his detention was an arrest, for which probable cause was lacking. *See United States v. Robertson*, 833 F.2d 777, 780–81 (9th Cir.1987).

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In this case, the officers' detention of Montoya was not permissible because it did not serve the special government interests outlined in *Summers*, and because Montoya was not an occupant of the premises. Not being present when the search was being conducted, and having been stopped while driving near the vicinity of the premises being searched one hour after the police began the search, Montoya could not flee with incriminating evidence, nor could he help with the search. In addition, for the same reason that a *Terry* frisk was not justified, the police could not, without any articulable suspicion, justify detaining Montoya to minimize a possible risk of harm to them.

Finally, we reject the state's argument that Montoya was an occupant of the premises. As we stated earlier, the person leaving the residence earlier in the day remained undescribed. There was nothing to connect Montoya to the residence. He was also not occupying the house when it was searched, nor was he attempting to leave the residence, by descending the steps, or getting into his car, or even walking on the sidewalk in front of the house, all actions contemplated by the Court in *Summers* as encompassed within the term "occupant" or "resident." Nothing in the language of the Court's decision, or in cases applying *Summers*, indicates any intention to apply the rule to a non-occupant, non-resident driving a vehicle in a public alley in the vicinity of a residence, where a search of that residence began one hour earlier. *See United States v. Boyd*, 696 F.2d. 63, 65 n. 2 (8th Cir.), *cert. denied*, 460 U.S. 1093, 103 S.Ct. 1794, 76 L.Ed.2d 360 (1983).[3]

Reversed and remanded for proceedings consistent with this opinion.

LIVERMORE, P.J., and FERNANDEZ, C.J., concur.

**3.** *See State v. Carrasco*, 147 Ariz. 558, 561, 711 P.2d 1231, 1234 (App.1985) (a visitor cannot be detained during execution of warrant without evidence of a connection between the visitor and seized contraband).