PEOPLE v JACKSON

Docket No. 121221. Submitted September 4, 1990, at Lansing. Decided December 19, 1990; approved for publication March 17, 1991, at 9:00 A.M.

Dorsey Jackson pleaded guilty in the Kalamazoo Circuit Court, Philip D. Schaefer, J., of carrying a concealed weapon and of being an habitual offender, second offense. The defendant appealed, claiming that the trial court erred in refusing to suppress evidence of the weapon, discovered during a pat-down search after a police officer permitted the defendant to enter a house while a narcotics raid, pursuant to a search warrant, was in progress.

The Court of Appeals *held:*

Under the totality of the circumstances, the trial court did not err in finding that the pat-down search was reasonable under the Fourth Amendment in light of the concern for the police officers' safety as a result of various threats which had been made against the officers of the special investigation unit, and circumstances which gave rise to a reasonable suspicion that the defendant might have been armed and dangerous.

Affirmed.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *James G. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*Joseph T. Hubbell,* for the defendant on appeal.

Before: DANHOF, C.J., and MICHAEL J. KELLY and McDONALD, JJ.

PER CURIAM. Defendant pleaded guilty of carrying a concealed weapon, MCL 750.227; MSA 28.424, and of being a second-felony offender, MCL 769.10; MSA 28.1082. He was sentenced to a prison

term of five years to seven years, six months and appeals as of right.

On December 21, 1988, Officer William Multhaupt of the Kalamazoo Public Safety Department participated in executing a search warrant at a suspected drug house. Multhaupt's role during the search was to guard the home's rear door. At approximately 11:00 P.M., Multhaupt heard a knock at the door and inquired as to who was there. Defendant responded that it was "Big John." Thereupon Multhaupt invited defendant into the home and promptly frisked him. The patdown search resulted in the discovery of a loaded handgun which was found in defendant's coat pocket.

At the evidentiary hearing on defendant's motion to suppress the evidence, Multhaupt testified that he did not have a particularized suspicion that defendant was either harboring contraband or armed and dangerous. Rather, Multhaupt performed the pat-down search merely as a precautionary measure to ensure the officers' safety during the raid. He added that his unit routinely frisks individuals present at the scene of a raid, including those who arrive after commencement of the raid. According to Multhaupt, those who arrive while a search is in progress are invited in and frisked because they pose a hazard to the officers. There is concern that someone approaching or entering the house may attempt to harm the officers conducting the search. This concern emanates from the various threats which have been lodged against members of Multhaupt's unit. The trial court held that it is reasonable for police officers to conduct pat-down searches of individuals arriving during the course of a drug raid because the officers have no way of knowing whether an individual may attempt to interfere with the

search or to jeopardize the officers' safety, particularly where the officers may pose a threat to persons because of facts within their knowledge which gave rise to the search warrant.

Defendant argues on appeal that the trial court erred in admitting the evidence because the search was not supported by particularized facts from which Multhaupt could have reasonably inferred that defendant was armed and dangerous.

A trial court's ruling at a suppression hearing will not be disturbed unless it is clearly erroneous. *People v Payton,* 166 Mich App 428, 430; 421 NW2d 191 (1988). Pat-down searches are governed by the two-pronged test established in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). *Terry* requires that a police officer must have reasonably concluded that criminal activity may be afoot and that the person with whom the officer is dealing may be armed and dangerous. In evaluating the reasonableness of these conclusions, due consideration must be given, not to an officer's unparticularized suspicion or hunch, but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Id.,* p 27. Further, the officer must be "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v New York,* 392 US 40, 64; 88 S Ct 1889; 20 L Ed 2d 917 (1968).

The prosecution argues that the trial court properly denied defendant's motion on the basis of *People v Broach,* 111 Mich App 122; 314 NW2d 544 (1981). In that case, the police frisked the defendant after he was discovered in a home which was being raided by the police. An undercover agent had purchased drugs from the home approximately five minutes before the search began. The arresting officer stated that it was depart-

mental procedure to search for offensive weapons when executing search warrants. The pat-down search produced a handgun and narcotics which led to the defendant's convictions. This Court found that because the defendant was discovered in a private residence known for drug sales and because an actual drug sale had occurred at the residence only minutes before the raid, it was reasonable for the officer to believe that the defendant was a participant in the narcotics trade and was armed and dangerous. *Id.,* pp 125-126. This Court added that "[t]he patdown search was a reasonable precaution to neutralize any threat of physical harm to the officers." *Id.,* p 126. The pat-down search was therefore held not to violate the defendant's constitutional rights.

The *Broach* Court, *supra,* p 126, cited *State v Broadnax,* 25 Wash App 704, 707; 612 P2d 391 (1980), another case dealing with a pat-down performed during a narcotics search of a residence, for the proposition that "[i]t would be unwise to suggest that the police should ignore the individuals present on the assumption that they were unarmed and uninvolved." We find that the trial judge in this case did not clearly err in justifying the search on the basis of minimizing the risk of harm to the police officers.

The searching officer initially testified that he did not have a particularized suspicion that defendant was armed. However, the officer then went on to particularize the circumstances which we believe raised a reasonable suspicion that defendant might have been armed and dangerous. We further note that the officer's initial statement cannot be accepted as a legal conclusion, because it is within the court's province to make such determinations.

Multhaupt testified that a threat exists that

someone may come to the site of a drug raid for the purpose of harming the officers conducting the raid. He added that this concern arises from the various threats which have been made against the officers of his special investigation unit. Given the fact that threats had been made against the unit and that defendant had sought entrance into the house during the course of the raid, we find that the pat-down search was justified under the circumstances. The trial court specifically ruled:

> The court believes that it is proper for officers to inquire when someone knocks at a door while they're engaging in a search warrant and to invite that person in, because for all they know, it could be someone who is aware that the search is in progress and who wants to interfere with that search or who wishes to jeopardize the officers' safety.

Under the totality of circumstances, the trial court did not err in finding that the search was justified by the concern for the police officers' safety.

Finally, we reject defendant's assertion that the evidence should be suppressed on the basis of *Ybarra v Illinois,* 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979). That case involved an unjustified cursory search of patrons in a public bar, whereas this case deals with the search of an individual at a residence targeted for drug sales, which was conducted in light of various threats made against the searching officers.

Affirmed.