NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DONALD DEAN ELLIS, III, *Appellant.*

No. 1 CA-CR 13-0357
FILED 07-10-2014

Appeal from the Superior Court in Maricopa County
No.  CR2011-115834-001
The Honorable Bruce R. Cohen, Judge

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew Reilly
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

¶1        Appellant Donald Dean Ellis, III (Ellis) appeals his conviction and sentence, arguing that the trial court erred in denying his motion to suppress evidence.   Ellis argues that he was wrongfully detained while the Phoenix Police Department (Phoenix P.D.) executed a search warrant at an apartment near where he was sitting in his truck an the apartment parking lot.  For the following reasons, we affirm the trial court's order denying the motion to suppress, as well as Ellis's conviction and sentence.  But we vacate the trial court's requirement that Ellis pay for DNA testing.

## FACTS AND PROCEDURAL HISTORY

¶2        Phoenix P.D. arrested Ellis after executing a search warrant on a Phoenix apartment (Apartment 12) suspected of being a drop house for drug sales.  The day before serving the search warrant, Phoenix P.D., led by Detective K. of the Drug Enforcement Bureau, conducted a controlled buy of narcotics from occupants of Apartment 12.  Detective K. sent a confidential informant (the CI) into Apartment 12 to purchase methamphetamine.   After buying the narcotics, the CI reported to Detective K. that he purchased the drugs from a man named Chris, an African-American male, and that inside Apartment 12, there was also a Caucasian male with facial piercings just below his eyes, acting as an armed security guard throughout the buy.

¶3        Detective K. briefed the Phoenix P.D. special assignments officers (SWAT team) on the parties that participated in the controlled buy before the search warrant was executed.  The SWAT team was serving the warrant in this case because there was potential for violence and the CI reported that there were people with guns inside Apartment 12.

¶4        As the SWAT team was approaching Apartment 12 to serve the warrant, the team noticed a small white Nissan truck (the Truck) parked in the complex parking lot about ten yards in front of Apartment

12's door, where Ellis was sitting in the driver's seat. Before entering Apartment 12, officers noted that [Ellis] had piercings under his eyes. Based on the description by the CI, a SWAT team member asked Ellis to step out of the Truck, detained and handcuffed him. Detective K. stated that Ellis had piercings on both of his upper cheeks below his eyes, similar to the ones the CI described on the white male acting as security in Apartment 12 the day before. While the SWAT team served the search warrant, Detective K. took the hand-cuffed Ellis and moved him away from the Truck and Apartment 12.

¶5 While detained, Ellis told Detective K. that he was not at the complex for Apartment 12, and he was there to visit somebody else in a different apartment. Detective K. patted Ellis down and determined that Ellis did not have any weapons or drugs on his person. Nonetheless, Detective K. continued to detain Ellis for approximately twenty minutes because the SWAT team was conducting the search of Apartment 12 and Ellis fit the description of a person who had been inside Apartment 12 the day before.

¶6 After the SWAT team finished clearing Apartment 12, Detective K. moved Ellis back to the front of the apartment where Detective K. took Ellis's personal information and asked Ellis if he had anything illegal in the Truck. Ellis told Detective K. that he did not have anything illegal inside the Truck and gave Detective K. permission to search the Truck. Detective K. searched the Truck, discovered the glove box was locked. He took the key from the ignition, used the key to open the glove box, and found $651 in cash, a digital scale, a box of open sandwich baggies, and a baggie containing a white powder substance, which was later determined to be 5.6 grams of cocaine.

¶7 Detective K. arrested Ellis after searching the Truck. After making the arrest, Detective K. questioned Ellis, and Ellis indicated that he was involved with selling drugs associated with Apartment 12. Ellis told Detective K. that he had sold drugs, "to make ends meet."

¶8 The State subsequently indicted Ellis on: (1) possession of narcotic drugs for sale in violation of Arizona Revised Statutes (A.R.S.) section 13-3408.A.2, a class 2 felony; and (2) possession of drug paraphernalia in violation of A.R.S. § 13-3415.A, .E, and .F, a class 6 felony. Before trial, the State amended Ellis's charge to only Count 1, possession of narcotic drugs for sale, a class 2 felony.

¶9        Ellis filed a motion to suppress the evidence found in the Truck, arguing that he was wrongfully detained. Ellis asserted that he was detained without reasonable suspicion, and therefore his arrest was without probable cause. The trial court held a hearing to consider evidence on Ellis's motion to suppress. The State presented evidence that Ellis was originally detained for the SWAT team's safety while executing the search warrant because Ellis was a white male with the same facial piercings that the CI had described as the person who was in the drug house and could have been armed. Detective K. also testified that he conducted a search of the Truck after receiving Ellis's permission to search the Truck. Detective K. testified that Ellis was present throughout the entire search and never withdrew his consent. At the conclusion of the hearing, the trial court denied Ellis's motion, holding that Ellis was "properly detained and . . . there was valid consent for the search of [Ellis's] vehicle."

¶10       The jury found Ellis guilty as charged. The trial court sentenced Ellis to a mitigated sentence of twelve years' imprisonment, to be served concurrently with another sentence to which Ellis had reached a plea agreement with the State for another crime. The trial court also ordered Ellis to pay various fines and fees. Finally, the trial court ordered Ellis to submit his DNA for analysis and to pay for the cost of that test.

¶11       Ellis's request for a delayed appeal was granted. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 (2003), 13-4031 (2010), and -4033 (2010).

**DISCUSSION**

I.     Motion to Suppress — Detention of Ellis

¶12       The sole issue on appeal is that the trial court erred by denying Ellis's motion to suppress the evidence found in his truck, after he was illegally detained. "We will not disturb the trial court's ruling on a motion to suppress absent a clear abuse of discretion." *State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). We review only the evidence presented at the hearing on the motion to suppress when reviewing a trial court's denial of a motion to suppress. *Id.* We defer to the trial court's factual findings if they are supported by the record and are not clearly erroneous. *State v. Estrada*, 209 Ariz. 287, 288, ¶ 2, 100 P.3d 452, 453 (App. 2004). We view the evidence in the light most favorable to sustaining the trial court's ruling. *State v. Rosengren*, 199 Ariz. 112, 115, ¶ 2, 14 P.3d 303,

306 (App. 2000). We review purely legal or constitutional issues de novo. *State v. Booker*, 212 Ariz. 502, ¶ 10, 135 P.3d 57, 59 (App. 2006).

**¶13**        Ellis contends that Phoenix P.D. did not have probable cause to detain him, therefore the evidence should have been suppressed under the "fruit of the poisonous tree" doctrine. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

**¶14**        "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). The Fourth Amendment governs just such seizures. *Id.* However, the United States Supreme Court has recognized that some seizures are significantly less intrusive than an arrest and may be "reasonable" and withstand scrutiny under the Fourth Amendment without probable cause. *Michigan v. Summers*, 452 U.S. 692, 696 (1981). In executing a search warrant for narcotics or another "kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence," police officers minimize the risk of harm to themselves or the occupants "if the officers routinely exercise unquestioned command of the situation." *Id.* at 702-03. Police have a recognized limited authority to conduct a reasonable detention if that the detention served the following law enforcement interests: (1) furthered officer safety, (2) facilitated completion of the search, and (3) prevented the detained person from fleeing the scene. *Id.* at 702-03; *see also State v. Montoya*, 164 Ariz. 459, 461, 793 P.2d 1126, 1128 (App. 1990).

**¶15**        While probable cause is generally required for a seizure to be reasonable under the Fourth Amendment, *Dunaway v. New York*, 442 U.S. 200, 213 (1979), "[p]robable cause is something less than the proof needed to convict and something more than suspicions." *State v. Aleman*, 210 Ariz. 232, 237, ¶ 15, 109 P.3d 571, 576 (App. 2005). Probable cause exists if the collective knowledge of the officers establishes they had reasonably trustworthy information sufficient to lead a reasonable person to believe an offense has been committed and the person to be arrested committed it. *Id.*

**¶16**        Even though Ellis was not physically inside Apartment 12 at the moment the SWAT team was preparing to execute the search warrant, Ellis was inside the apartment complex, thirty feet away from Apartment 12's front door, at the exact moment the SWAT team was entering the apartment. A man, matching Ellis's description, (white male with facial piercings below his eyes) had been inside the apartment the day before participating in the sale of drugs. The man matching Ellis's description

was suspected of having a gun in the apartment and was suspected of acting as security for the drug transaction. Therefore, the collective knowledge of Phoenix P.D. established that they had reasonably trustworthy information sufficient to lead a reasonable person to believe that Ellis had committed a criminal offense for which he could be arrested. *See Aleman*, 210 Ariz. at 237, ¶ 15, 109 P.3d at 576. Simply stated, Phoenix P.D. had probable cause to arrest Ellis for his involvement with Apartment 12 from the CI's report the previous day, before Detective K. discovered the contraband in the Truck.

**¶17** Moreover, in this case, Phoenix P.D.'s detention of Ellis was permissible because it served the special government interests outlined in *Summers*. Being present at the time of the search, Ellis could have assisted Phoenix P.D. with the search, or could have been a danger to the SWAT team as they entered Apartment 12. Additionally, Ellis could have been acting as security outside of Apartment 12 and alerted occupants inside to the raid, so that they may flee with incriminating evidence. Given all of these facts linking Ellis to Apartment 12's potential criminal activities, Phoenix P.D. had sufficient articulable suspicion that justified detaining Ellis to minimize a possible risk of harm to them or to the execution of their search warrant.

**¶18** "The Fourth Amendment requires that a seizure be 'reasonable.' As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *State v. Carrazco*, 147 Ariz. 558, 560, 711 P.2d 1231, 1233 (App. 1985). While we are mindful that "a visitor to the scene of a lawful search is not subject to a search warrant," *State v. Lewis*, 115 Ariz. 530, 532, 566 P.2d 678, 680 (1977), under this set of facts, there is evidence to demonstrate that Ellis's detention was not arbitrary interference by Phoenix P.D., and the officers had reason to believe that Ellis was not simply an innocent bystander who just happened upon the scene. Therefore, under the circumstances presented here, detention of Ellis during the execution of the warrant was reasonable under the Fourth Amendment and *Terry*, and the trial court properly denied the motion to suppress based on Ellis's pre-arrest detention.

**¶19** Ellis argues this court found that mere presence in a home for which police have a search warrant does not constitute grounds to detain a non-occupant in *State v. Carrasco,* 147 Ariz. 558, 711 P.2d 1231 (App. 1985). In *Carrasco*, however, the defendant was a visitor at the house when the officers arrived to execute the warrant, and there was no

reasonable basis to suspect that he was involved in any of the criminal activity. *Id.* at 559-60, 711 P.2d at 1232-33. By contrast, in this case, Phoenix P.D. had a description of Ellis and information that he was providing security for the drug transaction.

**¶20** Ellis also argues this court held a generalized fear based on experience was not enough to allow officers the right to stop and frisk a nearby vehicle in the execution of a search warrant of a home in *State v. Montoya*, 164 Ariz. 459, 793 P.2d 1126 (App. 1990). Yet, in *Montoya*, the officers had no information linking the defendant to the house they were searching and thus no probable cause to arrest the defendant. *Id.* at 461-62, 793 P.2d at 1128-29. Again, here, Phoenix P.D. had a detailed description of Ellis and information linking him to the criminal activities of Apartment 12's occupants.

**¶21** Therefore, these two cases do not support Ellis's position, and Phoenix P.D.'s detention of Ellis was reasonable. Accordingly, the trial court did not err by denying Ellis's motion to suppress.

II.     DNA Testing

**¶22** Finally, the trial court ordered Ellis to submit to DNA testing and pay the cost of the testing pursuant to A.R.S. § 13-610 (2010). While A.R.S. § 13-610.A authorizes the department of corrections to "secure a sufficient sample of blood or other bodily substances for [DNA] testing," the statute does not identify who should incur the costs of testing. *See, e.g., State v. Reyes*, 232 Ariz. 468, 471, ¶ 9, 307 P.3d 35, 38 (App. 2013) (internal quotation marks omitted). Although Ellis could be fined as part of his sentence, the trial court's order that Ellis pay the DNA testing fee was not a fine under A.R.S. § 13-801.A for the commission of felonies. *See id.* at 472, ¶ 13, 307 P.3d at 39. Because § 13-610 does not require Ellis to incur the cost of the DNA testing, there is no basis for the cost to be imposed. *See id.* at ¶ 14. Accordingly, we vacate the portion of the sentencing order requiring Ellis to pay for DNA testing.

**CONCLUSION**

**¶23** For the above reasons, we affirm the order of the trial court denying Ellis's motion to suppress. We further affirm Ellis's convictions and sentences and vacate the portion of the sentence which requires Ellis to pay for DNA testing.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : gsh