2001-NMCA-072

32 P.3d 800

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Roberto CASSOLA, aka Roberto Casola, Defendant–Appellee.**

**No. 21,236.**

Court of Appeals of New Mexico.

Aug. 7, 2001.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellant.

Phyllis H. Subin, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

*OPINION*

WECHSLER, Judge.

{1} The State of New Mexico appeals the district court's order suppressing items seized upon Defendant's arrest and allegedly inculpatory statements made by Defendant. The State argues that no Fourth Amendment violation occurred as the officers seized Defendant based on probable cause to arrest. We disagree and therefore affirm the district court.

*Standard of Review*

{2} In reviewing a suppression order, this Court reviews the facts under a substantial evidence standard and reviews the district court's application of the law to those facts de novo. *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994); *State v. Attaway,* 117 N.M. 141, 144, 870 P.2d 103, 106 (1994). We view the facts in the manner most favorable to the prevailing party and make all reasonable inferences in support of the district court's ruling, even in the absence of findings of fact. *State v. Jason L.,* 2000–NMSC–018, ¶¶ 10, 11, 129 N.M. 119, 2 P.3d 856.

*Facts and Procedural Background*

{3} In this case, Agent Rick Haury and Sergeant Mark Offner were looking for Maya Williams. Agent Haury had received information that she might have been staying at 5701 Douglas SW in Albuquerque. While surveilling the property, the officers observed a black car stop at the property. Someone got out of the black car, went to speak with Defendant who was working on another car in the driveway, and returned to the black car. The officers followed the black car and pulled behind it when it stopped on the side of the road facing oncoming traffic. While the officers inquired about Ms. Williams, Richard Burley, the father of the driver of the car, approached.

{4} In the ensuing conversation, Mr. Burley advised Agent Haury that he was renting the property at 5701 Douglas from his father and he had not seen Ms. Williams in a long time. When Agent Haury asked if he could return to look at the residence, Mr. Burley replied, "Sure. Come back, I don't have anything to hide."

{5} When the officers returned to the property, they parked in the driveway near a silver car on which Defendant had been working. They saw seven or eight people on the property and asked for their identification. Agent Haury testified that the silver car did not have a license plate, but rather a temporary sticker without all the required information. Standing outside the car, Sergeant Offner observed the VIN, located on the car's dashboard, and discovered that the

car was stolen by checking through the National Crime Information Center (NCIC) on his police radio. Agent Haury further testified he had observed tools, a stereo, and a couple of backpacks in the silver car. The wires of the stereo were hanging out and part of the dashboard where the stereo was had been pulled out.

{6} The officers arrested Defendant and another man who had been working on the car for receiving and concealing a stolen vehicle. Thereafter, the officers asked about the ownership of the vehicle, and Defendant stated that it belonged to a friend of his who owned a car lot and Defendant was putting in the stereo for him. Defendant did not know the name of the owner or the name of the business.

{7} Defendant filed a motion to suppress evidence, including any contraband seized after the arrest. As grounds for his motion, Defendant stated, *inter alia,* that the officers did not have lawful reason to stop him and demand his name and presence, that his arrest was unreasonable, and that he was stopped without reasonable articulable suspicion that he had committed any crime. At the conclusion of the hearing, the district court granted Defendant's motion, concluding that the officers unnecessarily expanded the scope of their investigation and that they did not have reasonable suspicion that Defendant had committed or was committing a crime. In the order granting the motion, the district court found that the officers "unreasonably expanded their investigation by questioning the defendant about his identity when they were seeking to locate a female fugitive."

*Items Seized*

{8} The officers did not have a warrant to search the silver car on which Defendant was working. However, the officers searched the silver car incident to Defendant's arrest and seized items found in the vehicle. *State v. Crenshaw,* 105 N.M. 329, 332–33, 732 P.2d 431, 434–35 (Ct.App.1986) (enumerating the exceptions to the warrant requirement as probable cause with exigent circumstances, search incident to arrest, inventory searches, consent, hot pursuit, plain view, and open

fields). For this search to have been valid, constitutional principles require probable cause to effect the arrest. *State v. McAdams*, 83 N.M. 544, 545, 494 P.2d 622, 623 (Ct.App.1972) ("A search without a warrant is lawful when it is incident to a lawful arrest, and the legality of an arrest without a warrant depends upon whether the arrest was based upon probable cause."); *State v. Hawkins*, 1999 NMCA 126, ¶ 17, 128 N.M. 245, 991 P.2d 989 (stating that the test for probable cause is "whether the facts and circumstances within the officer's knowledge would warrant a person of reasonable caution to believe that an offense is being committed"). We note that the State did not raise an argument that exigent circumstances permitted the search of the car in this case.

{9} The officers arrested Defendant for receiving and concealing a stolen vehicle. The indictment charged Defendant with receiving or transferring a stolen vehicle (possession) in violation of NMSA 1978, § 66–3–505 (1978). An element of this crime is that the defendant knows or has reason to believe that the vehicle has been stolen or unlawfully taken. *Id.;* UJI 14–1652 NMRA 2001.

{10} When they effected the arrest, the officers knew that the car was stolen, that the car had no license, and that the temporary tag was incomplete. However, the officers had no information about Defendant's possession of the car. They only observed Defendant working on the car on private property, and, because the car was on private property, Defendant was not violating vehicle registration laws.

{11} The district court concluded that "there was no reasonable suspicion that ... Defendant had or was committing a crime." When we view the evidence in the manner most favorable to Defendant and disregard all inferences contrary to the district court's decision, *Werner*, 117 N.M. at 317, 871 P.2d at 973, we conclude that the officers did not have probable cause to believe that Defendant knew or had reason to believe that the car was stolen or unlawfully taken. Without probable cause to make the arrest, the subsequent search of the car was unreasonable, and the district court properly suppressed the use of the items seized as evidence.

*Defendant's Statements*

{12} Defendant's motion to suppress included inculpatory statements allegedly made by Defendant. We interpret the motion to mean statements Defendant made to the officers at the scene concerning his identity. Defendant told the officers that his name was Richard Espinosa and that he did not have identification. The indictment charged Defendant with concealing his identity contrary to NMSA 1978, § 30–22–3 (1963).

{13} If the officers had unlawfully detained Defendant, Defendant's inculpatory statements made during the detention would be properly suppressed. *See State v. Hernandez*, 1997–NMCA–006, ¶ 30, 122 N.M. 809, 932 P.2d 499 (stating that evidence obtained as result of illegal detention must be suppressed except in very limited circumstances); *see also Wong Sun v. United States*, 371 U.S. 471, 484–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (stating that no distinction exists between physical evidence and oral evidence for purposes of exclusion following an "official illegality"). The officers were on the property with the tenant's consent to locate a female suspect. While on the premises, the officers questioned the persons present, other than the tenant, about their identification and required them to produce identification which Sergeant Offner then checked through NCIC on his police radio. The officers asked those present to remain at Mr. Burley's vehicle. Although people came and went from the mobile home, everyone stayed in the immediate area, and Agent Haury kept his eye on the people who left the car to go to the mobile home. The officers told a juvenile who came to the scene from another mobile home to go home. Agent Haury testified only that Defendant was "probably" free to leave at any time.

{14} This Court has held that law enforcement officers may not lawfully detain nonresidents on the premises during a search pursuant to a warrant unless the officers have "a reasonable basis to believe that the non-resident has some type of connection to the premises or to criminal activity." *State v. Graves*, 119 N.M. 89, 92, 888 P.2d 971, 974 (Ct.App.1994). We believe that the reasoning of *Graves* applies to this case, in which

the officers were lawfully on private property by consent. In both circumstances, the officers had a valid basis to be on private property subject to the scope of their authority, i.e., the warrant or the consent. Thus, applying *Graves,* we look to whether the officers had a reasonable basis to believe that Defendant, a non-resident, had some type of connection to the investigation of the premises or to criminal activity.

{15} As we have stated above, under our standard of review, there was substantial evidence to support the district court's finding that the officers did not have reasonable suspicion to believe that Defendant was engaged in criminal activity. Moreover, the officers did not have any basis to believe that Defendant had some type of connection to their investigation of the premises for the female suspect. There was no evidence that the officers inquired of Defendant about their investigation. Agent Haury only connected Defendant to the investigation by testifying that he believed that it was necessary for him to obtain identification of the people present for his investigation.

{16} An unlawful seizure of the person occurs when, based on all circumstances, " 'a reasonable person would have believed that he [or she] was not free to leave.' " *Jason L.,* 2000–NMSC–018, ¶ 15, 129 N.M. 119, 2 P.3d 856, (quoting *State v. Lopez,* 109 N.M. 169, 170, 783 P.2d 479, 480 (Ct.App.1989)); *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that an unlawful seizure occurs when an officer stops a person and "restrains his [or her] freedom to walk away"). To determine the validity of a police detention, we look at "the circumstances surrounding the stop, including whether the officers used a show of authority," as well as whether "a reasonable person would have believed he or she was not free to leave." *Jason L.,* 2000–NMSC–018, ¶ 19, 129 N.M. 119, 2 P.3d 856.

{17} Under the circumstances of this case, we agree with Defendant that the officers unlawfully detained him at the scene. Defendant, like the officers, was on the leasehold of Mr. Burley with consent. Agent Haury, however, did not testify to any connection between Defendant and the police investigation of the female suspect. More-

over, when the officers questioned the people on the property for their identification, the officers sought to maintain those present in a group next to the black car. Although two or three of the people went to the mobile home to eat or bring back food, they did not leave the immediate area. The district court could reasonably infer from the testimony that the officers exercised authority over the movement of those on the property. *See id.* ¶¶ 10, 11; *Werner,* 117 N.M. at 317, 871 P.2d at 973. Indeed, Agent Haury could not testify with certainty that Defendant was free to leave at any time. Agent Haury did not tell the people that they were free to go; rather he expected them to obey him. *See Jason L.,* 2000–NMSC–018, ¶ 18, 129 N.M. 119, 2 P.3d 856. The district court could reasonably infer from Agent Haury's testimony that Defendant, who was not part of their investigation of a female suspect, did not feel free to leave by virtue of the officers' show of authority. *Id.* ¶ 19. Thus, because of Defendant's unlawful detention, the district court properly suppressed Defendant's statements.

*Conclusion*

{18} We affirm the district court's grant of Defendant's motion to suppress evidence.

{19} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY, Judge, and CELIA FOY CASTILLO, Judge.