888 P.2d 971

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Billy Charles GRAVES, Defendant–Appellant.**

**No. 14921.**

Court of Appeals of New Mexico.

Nov. 23, 1994.

Tom Udall, Atty. Gen., Shari Weinstein, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, David Henderson, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

FLORES, Judge.

The opinion filed November 1, 1994, is withdrawn and the following substituted therefor.

Defendant pled guilty to trafficking by possession with intent to distribute cocaine, reserving the right to appeal the trial court's denial of his pre-trial motions. The trial court denied Defendant's motions to suppress physical evidence and oral statements and Defendant appeals. On appeal Defendant raises the following issues: (1) whether the standard of review of the trial court's ruling on the motion to suppress physical evidence in the instant case is de novo review; (2) whether the search and seizure of Defendant was unlawful because (a) the warrant was not valid, (b) Defendant was not a resident of the premises searched, and (c) the detention was an illegal arrest; (3) whether the statements made and the waiver signed by Defendant were voluntary; and (4) whether the cocaine seized from Defendant

at the police station was a product of an illegal arrest. We reverse.

## FACTS

On November 26, 1991, Detective Brian Sallee (Sallee) obtained a search warrant for certain premises identified in the affidavit for search warrant as 636 Grove S.E., # C in Albuquerque. The affidavit also included a description of persons to be searched as "any persons and/or vehicles which can be shown to be involved in drug dealing (purchasing or selling)." On December 4, 1991, Sallee executed the warrant. Accompanying Sallee in the execution of the warrant were Detectives Samora and Roberts, Sergeant Chavez, and Officers Carroll, Salcido, and Tanuz.

Defendant was present during the execution of the search warrant and was taken into the living room, along with several other individuals in the house. All these individuals, including Defendant, and with the exception of the children, were then handcuffed. The police officers then searched Defendant and all the individuals who were handcuffed and sat them down. At some point during the search the officers discovered a gas bill made out to Cindy Hicks, who was the tenant of the premises searched. The police knew that Defendant was not a resident of the premises. Defendant, while sitting on the couch and handcuffed from behind, was observed squirming and trying to get into his front pocket. Defendant was then searched again, and crack cocaine was found in his left front pocket. Defendant was then placed under arrest and transported to a police substation. Although the length of Defendant's detention from the time of the execution of the warrant to the time of his formal arrest is unclear, it appears the detention lasted approximately thirty minutes. At the substation, Defendant gave Sergeant Chavez another "stone" of crack cocaine, allegedly made some incriminating statements, and signed an advice of rights form.

## STANDARD OF REVIEW

Defendant contends that the standard of review of the motion to suppress in the present case is de novo review. We agree. In *State v. Attaway*, 117 N.M. 141, 870 P.2d 103 (1994), our Supreme Court dealt with the standard of review for the determination of exigent circumstances. The standard of review set out in *Attaway* is that any predicate findings of historical fact on the part of the trial court below should be given deference. *Id.* at 144, 870 P.2d at 106. However, when a mixed question of law and fact implicates constitutional rights, that question resembles a conclusion of law more closely than a historical fact; in resolving such a question, the appellate court reviews it de novo. *Id.* at 144–46, 870 P.2d at 106–08. We perceive no difference between the question of exigent circumstances and the issue of the legality of Defendant's detention. Therefore, we review de novo the court's determination regarding that issue. *Cf. State v. Werner*, 117 N.M. 315, 316–17, 871 P.2d 971, 972–73 (1994) (reviewing issue of whether defendant was subjected to de facto arrest as issue of law).

## DISCUSSION

The trial court found that Defendant gave the officers probable cause to search him because of Defendant's "obvious effort to conceal something." The trial court also found that this probable cause was "separate and apart from the search warrant," and that the officers had a right to detain Defendant. We disagree.

Initially, we address the issue of whether Defendant was subject to the search warrant. The affidavit for search warrant contains language authorizing the search of "any persons and/or vehicles which can be shown to be involved in drug dealing (purchasing or selling)." Defendant contends that this language did not serve to authorize the seizure or subsequent search of Defendant. We agree. In *State v. Valdez*, 91 N.M. 567, 568, 577 P.2d 465, 466 (Ct.App. 1978), this Court found that the " 'all persons' " language did not make the warrant invalid, but was surplusage. Since the warrant in this case did not specifically authorize the seizure or subsequent search of Defendant, the State bears the burden of proof to show that its conduct with respect to Defendant was reasonable. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) (mere propinquity of indi-

vidual to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person). For the reasons that follow, we believe the State has failed to meet this burden.

▮ Regarding whether non-residents on the premises can be lawfully detained while a search warrant is being executed, Defendant contends that the police should not have detained him simply because he was found on the premises when the officers executed the search warrant. We agree, and hold that the police cannot detain a non-resident unless they have a reasonable basis to believe that the non-resident has some type of connection to the premises or to criminal activity. See Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); Ybarra, 444 U.S. at 91, 100 S.Ct. at 342. Thus, the dispositive issue here is whether the detention of Defendant on the premises during the course of the search was legal.

The traditional justification for detention is probable cause; however, other detentions are constitutionally permissible under certain circumstances. See Dunaway v. New York, 442 U.S. 200, 208–10, 99 S.Ct. 2248, 2254–55, 60 L.Ed.2d 824 (1979) (a Terry stop is based on the rationale that some seizures are substantially less intrusive than arrests and may be warranted to protect officers and aid them in their efforts to detect and prevent crime); Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) ("A brief stop of a suspicious individual . . . may be most reasonable in light of the facts known to the officer[s] at the time."). Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny have attempted to balance the competing interests of effective law enforcement and individual privacy. In order for this to be accomplished, the government must be able to demonstrate a " 'reasonable suspicion' " that the individual was engaged in criminal activity. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

In Summers, the United States Supreme Court established another limited exception to the probable cause requirement and ruled that a resident of the premises being searched could be detained for the duration of the search. In that case, police officers encountered the defendant walking down his front steps as they were about to execute a search warrant. They requested entrance into his house and detained him during the search. After finding drugs in the basement of the house, the police arrested the defendant and found heroin in his pocket. Summers, 452 U.S. at 693, 101 S.Ct. at 2589.

Summers reaffirmed the holding in Dunaway that an official seizure of a person must be supported by probable cause even if no formal arrest is made. It also added that some seizures, significantly less intrusive than formal arrest, may be constitutionally permissive. Id. at 699–700, 101 S.Ct. at 2592–2593. Summers stated that "[i]n assessing the justification for the detention of [a resident] of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the 'articulable facts' supporting the detention are relevant." Id. at 702, 101 S.Ct. at 2594. The Court defined these law enforcement interests as (1) preventing flight in the event that incriminating evidence is found; (2) minimizing the risk to law enforcement officers; and (3) facilitating the search. Id. at 702–03, 101 S.Ct. at 2594–95. Although the Court recognized that it also had to consider the nature of the articulable and individualized suspicion on which the police based the detention of the resident, it noted that a search warrant provided an objective justification for the detention. Id. at 703, 101 S.Ct. at 2594. We now determine whether Summers applies in the instant case and whether Defendant's detention was reasonable under the circumstances.

Summers did not address whether the search warrant authorized the detention of the defendant as a non-resident. Summers appears not to have made a distinction between residents and non-residents since the defendant in that case was a resident. In the present case the police knew Defendant was not a resident of the premises. The decision in Summers was founded on the logical conclusion that a resident's control over premises which are the subject of a search warrant provides a sufficient connec-

tion with the suspected illegal activities so that it is reasonable to detain that individual for the duration of the search. *Id.* at 703–04, 101 S.Ct. at 2594–95. Additionally, the Court in *Summers* discussed the practicality of having the resident nearby to open locked doors or locked containers, etc., and otherwise help expedite the search. Thus, while a resident may be detained during the execution of a residential search warrant, we believe that this limited exception to the probable cause requirement cannot reasonably be extended to those merely present on the premises, since the foregoing justifications are inapplicable to a visitor.

Although New Mexico courts have not directly addressed this issue, the issue of the detention of non-residents was briefly discussed in *Valdez.* In *Valdez,* where the defendant reentered the premises being searched and was visibly under the influence of heroin, this Court held that "it is reasonable to detain persons found on the premises while the search is being conducted pursuant to a search warrant." *Valdez,* 91 N.M. at 569, 577 P.2d at 467. *Valdez* also quotes a 1925 case, *City of Olympia v. Culp,* 136 Wash. 374, 240 P. 360, *aff'd,* 136 Wash. 694, 240 P. 362 (1925), which states:

> "Officers making a search of premises under a search warrant may lawfully detain all persons found therein until the search is concluded. Any other rule would frustrate the purposes of the search; the officers would be compelled to stand idly by while the articles for which the search was instituted were carried away."

*Valdez,* 91 N.M. at 568–69, 577 P.2d at 466–67.

At first glance, *Valdez* appears to allow police to detain non-residents as well as residents. However, *Valdez* deals with facts that can be readily distinguished from the present case. In *Valdez* the defendant reentered the premises being searched, was observed to be under the influence of heroin, and the police officer knew the defendant was a heroin user. *Id.* Because these facts or similar facts are clearly absent here, *Valdez* is not applicable to the present case. Secondly, other cases decided after *Valdez* address whether police can lawfully detain non-residents as well as

residents in a much clearer fashion. *See, e.g., Summers; Ybarra.* Cases in other jurisdictions since *Summers* and *Ybarra* have recognized the value of the standardized procedure permitted by *Summers,* but limited the applicability of that procedure. *See generally* 2 Wayne R. LaFave, *Search and Seizure* § 4.9(e), at 309–10 (2d ed. 1987) (suggesting *Summers'* use of the word "occupants" be construed as a limiting term). Alternatively, police should have facts that would render a detention reasonable under the circumstances. We believe this approach would be in line with *Summers'* examination of "the law enforcement interest and the nature of the 'articulable facts'" and with New Mexico case law. *Summers,* 452 U.S. at 702, 101 S.Ct. at 2594; *see State v. Cohen,* 103 N.M. 558, 561, 711 P.2d 3, 6 (1985) (the ultimate test is one of reasonableness of the detention under the circumstances including the facts the detaining officer observed), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). Accordingly, we adopt the "presence plus" approach adopted in *State v. Broadnax,* 98 Wash.2d 289, 654 P.2d 96, 103 (1982) (en banc) and *State v. Carrasco,* 147 Ariz. 558, 560, 711 P.2d 1231, 1233 (Ct.App.1985). *See also Lippert v. State,* 664 S.W.2d 712, 720 (Tex.Crim.App.1984) (en banc) (mere presence at a place for which the police have a search warrant does not alone constitute grounds to detain).

In *Broadnax,* the petitioner, Thompson, was present during the execution of a search warrant. Thompson was detained and then searched by the police. *Broadnax* ruled that "'mere presence' is not enough; there must be 'presence plus' to justify the detention or search of an individual, other than [a resident], at the scene of a valid execution of a search warrant." *Broadnax,* 654 P.2d at 103. Several recent cases illustrate what type of additional circumstances justify a detention. *See, e.g., United States v. Holder,* 990 F.2d 1327, 1329 & n. 3 (D.C.Cir.1993) (when person found inside apartment being searched was only five feet from a drug-laden table, it didn't matter "[w]hether he was entering, exiting, or merely present"); *United States v. Pace,* 898 F.2d 1218, 1240 (7th Cir.) (fact that persons were inside another's home with

money and drugs out in the open suggested that resident trusted them and that they were involved in his drug operation, thus providing probable cause to arrest them), *cert. denied,* 497 U.S. 1030, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990); *cf. State v. Lovato,* 112 N.M. 517, 817 P.2d 251 (Ct.App.) (where officers had reason to believe that suspects may have been involved in a drive-by shooting and that suspects may have been armed and dangerous, detention by handcuffing the defendants immediately permissible), *cert. denied,* 112 N.M. 388, 815 P.2d 1178 (1991).

This approach was also followed in *Carrasco,* where the defendant was a visitor present during the execution of a search warrant. *Carrasco,* in interpreting *Summers,* found that a resident's "control over premises which are the subject of a search warrant provides a sufficient connection with the suspected illegal activities so that it is reasonable to detain *that* individual for the duration of the search." *Carrasco,* 711 P.2d at 1234. However, this exception to the probable cause requirement does not apply to visitors, and in order to justify the detention of visitors there must be facts present that would render it reasonable under the circumstances. *Id.* 711 P.2d at 1234 (suggesting balancing test be applied to determine if seizure of property was reasonable under the circumstances) (citing *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)).

In this case, Defendant was not shown to have any connection with the drugs and paraphernalia discovered on the searched premises, and there is no showing the officers had grounds to suspect such a connection. No circumstances were presented to give rise to a reasonable suspicion Defendant was involved in criminal activity. There is no articulable reason given why Defendant was detained for at least thirty minutes while the search progressed. It appears to this Court that recognizing presence alone as sufficient to detain a person found on premises subject to a search warrant would provide unlimited and unreviewable discretion. Such discretion, we believe, would betray the underlying principles of the Fourth Amendment. Accordingly, we hold that "mere presence" does not justify the arrest or detention of a person, other than the resident, at a residence lawfully being searched. *See Summers; Ybarra.*

We now look to determine whether there were any facts presented which would, nevertheless, justify the detention of Defendant in the present case and render it reasonable under the circumstances. In examining whether a detention is reasonable under the circumstances, a court must determine, looking at the totality of the circumstances, whether "the officers diligently pursued a means of investigation that would dispel or confirm their suspicions quickly." *United States v. Winfrey,* 915 F.2d 212, 217 (6th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991).

As discussed below, in this case, the record indicates that the police were not acting diligently to confirm or dispel whether Defendant was involved in the "purchasing or selling" of drugs. *See Werner,* 117 N.M. at 318–19, 871 P.2d at 974–75. In the present case, the police detained a total of eight individuals, including both adults and children. There were seven officers present during the execution of the warrant. When the police first entered the premises, there were no attempts to flee, no furtive gestures or sudden movements towards a weapon, no threats were made, and Defendant did not resist detention. There was no testimony that the police feared Defendant or feared that evidence would be destroyed by Defendant, nor was Defendant the target of the search warrant. Before being placed in handcuffs, Defendant was not shown to be committing or about to commit any criminal offense, nor to be under the influence of alcohol or drugs. Moreover, there is no evidence that the police had any knowledge of Defendant's prior criminal record.

Once it was established that (1) Defendant was not a resident of the house being subjected to a warranted search, (2) the police had no specific reason to fear Defendant, and (3) the police had no more than a bare suspicion that he might be connected with the contraband expected to be found in the premises, the police should have released Defendant from any further detention. *See*

*Berkemer v. McCarty,* 468 U.S. 420, 439–40, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317 (1984) (a brief stop of a suspicious individual may be most reasonable in light of the facts known to the officers at the time, but, "unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released" (footnote omitted)); *State v. Lopez,* 109 N.M. 169, 172–73, 783 P.2d 479, 482–83 (Ct.App.) (absent reasonable suspicion, an officer may not restrain a person), *cert. quashed,* 109 N.M. 131, 782 P.2d 384 (1989). By detaining Defendant for approximately thirty minutes, sitting him on the couch, and handcuffing him, the police did not perform or permit a speedy, focused investigation to confirm or dispel individualized suspicion of criminal activity. *See Werner,* 117 N.M. at 319, 871 P.2d at 975 ("The concept of diligence has an aspect of speed or haste."). Therefore, we hold that the detention of Defendant was not reasonable under the circumstances, and thus was illegal. Accordingly, we reverse the trial court's denial of Defendant's motions to suppress physical evidence and statements made by Defendant.

CONCLUSION

We hold that the detention of Defendant was unjustified and illegal. We further hold that the physical evidence and statements obtained were a product of the illegal detention, and therefore fruit of the poisonous tree and must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, we need not reach Defendant's remaining issues. We reverse the trial court's denial of Defendant's motions to suppress all evidence as a result of the illegal detention.

**IT IS SO ORDERED.**

MINZNER, C.J., and DONNELLY, J., concur.