**Certiorari Denied, January 6, 2010, No. 32,089**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-020**

**Filing Date: November 18, 2009**

**Docket No. 28,276**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**DON WINTON,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}**   Defendant appeals the denial of his motion to suppress evidence found on him as a result of a search and seizure during the execution of a no-knock warrant. We hold that Defendant's Fourth Amendment rights were not violated when police detained Defendant for fifteen minutes while the

1

warrant was being executed or when they subsequently conducted a pat-down search of Defendant. We therefore affirm the district court order denying Defendant's motion to suppress.

**FACTUAL AND PROCEDURAL HISTORY**

**{2}** Officers from the Clovis Police Department arrived at 1822 Hammett Street at approximately 8:00 a.m. to execute a search warrant on the residence and person of Joseph Sandoval. The search warrant contained a no-knock provision "for officer safety" based upon the affidavit which stated the subject property contained "drugs, guns, and money" and that Sandoval "was not afraid to shoot someone if necessary."

**{3}** When the police arrived at 1822 Hammett Street, they encountered Defendant and a friend who were leaving the property at 1824 Hammett Street and entering the property at 1822 Hammett Street to return to their vehicle. Defendant testified that he had paid a visit to his friend's house located at 1824 Hammett Street to play foosball. At the time officers arrived, both men were located approximately twenty to twenty-five feet from Sandoval's trailer. Both Defendant and his friend were ordered to the ground. While face down on the ground, an officer further restrained Defendant at gun point with his boot on Defendant's neck. The officer kept his boot on Defendant for about five minutes, and kept Defendant on the ground for another ten minutes. In total, Defendant remained on the ground for approximately fifteen minutes while other officers executed the warrant.

**{4}** Officer Hengst testified that after searching the residence, he exited to find both men lying "unsecured" on the ground. He approached the men and placed handcuffs on Defendant. He observed a knife in Defendant's back pocket and then removed it. The district court found that the knife had been "plainly visible." Officer Hengst asked Defendant if he had any more knives on him, and Defendant stated that he might have another knife. While continuing to pat Defendant down, Officer Hengst felt a hard object in Defendant's jacket pocket. Believing it may be another knife, Officer Hengst asked Defendant if it was a knife. Defendant said he thought it was and gave Officer Hengst permission to remove it after Officer Hengst requested such permission. As Officer Hengst pulled the object out, which turned out to be a cellular telephone, a glass pipe fell out of Defendant's pocket and onto the ground. Based on his training and experience, Officer Hengst immediately recognized the pipe to be one commonly used to ingest drugs and believed it contained methamphetamine residue. Defendant was placed under arrest, and a search of his person yielded a baggy of suspected methamphetamine. Defendant was subsequently charged with possession of a controlled substance and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-23 (2005) and NMSA 1978, Section 30-31-25.1(A) (2001).

**{5}** Defendant moved the district court to suppress the evidence arguing it was unlawfully discovered after a warrantless and nonexceptional search. Defendant first asserted that the search warrant for 1822 Hammett Street did not give the police the authority to detain and search him. Without such authority under the warrant, Defendant argued that police lacked specific and articulate facts to support a warrantless search of his person. Further, under *State v. Graves*, 119 N.M. 89, 888 P.2d 971 (Ct. App. 1994), Defendant argued that his mere presence during the execution of a search warrant did not justify the officer's actions.

**{6}** The bulk of the testimony and argument at the suppression hearing centered on Defendant's location and the layout of the premises subject to the warrant. The property subject to the search warrant, 1822 Hammett Street, was located on a lot adjacent to 1824 Hammett Street. While there is conflicting evidence whether a fence separated the properties, Officer Hengst testified that he believed Defendant was located on the property described in the warrant when he first saw Defendant. The district court found that when Defendant was seized he was outside the property line where 1822 Hammett Street was located. However, the district court further found that Defendant had been on the property described in the search warrant earlier when he parked his vehicle, and he was returning to it when the police arrived. Finally, the district court found that this is a "family compound with reciprocal access among the structures." Therefore, concluded the court, Defendant was in a location where he could be lawfully searched during the execution of the warrant.

**{7}** After Defendant's motion was formally denied, Defendant entered into a conditional plea, reserving his right to appeal the denial of his motion to suppress.

## DISCUSSION

### STANDARD OF REVIEW

**{8}** Appellate review of a motion to suppress involves a mixed question of fact and law. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Factual questions are reviewed for substantial evidence, and all facts are viewed in a light most favorable to the prevailing party. *State v. Vandenberg*, 2003-NMSC-030, ¶¶ 17-18, 134 N.M. 566, 81 P.3d 19. Furthermore, "all reasonable inferences in support of the court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (internal quotation marks and citation omitted). Legal questions are reviewed de novo. *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836.

### PRESERVATION

**{9}** The State first contends that Defendant failed to preserve the challenge to his detention during the execution of the warrant. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked."). The State emphasizes the distinction between the analysis for a search and the analysis for a seizure and asserts Defendant did not fairly invoke a ruling on the seizure issue. The record indicates that at the suppression hearing before the district court Defendant argued, "There must be . . . articulate facts to justify the detention of searching an individual." We conclude that Defendant's argument was sufficient to properly preserve the issue.

**{10}** The State also asserts Defendant failed to properly assert an independent state constitutional claim. *See State v. Ochoa*, 2009-NMCA-002, ¶ 9, 146 N.M. 32, 206 P.3d 143, *cert granted*, 2008-NMCERT-012, 145 N.M. 572, 203 P.3d 103 (stating that to preserve such actions, the "'party also must assert *in the trial court* that the state constitutional provision at issue should be interpreted

3

more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision'") (quoting *State v. Gomez*, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1). Defendant's only reference to the New Mexico Constitution occurred at the suppression hearing, at which time Defendant concluded his argument with: "New Mexico, as you know, takes a stronger view on search and seizure issues and personal freedoms than the Supreme Court of the United States." We agree with the State that this statement alone is insufficient. *Ochoa*, 2009-NMCA-002, ¶ 9. As such, we do not consider whether the New Mexico Constitution provides greater protection than the United States Constitution in this case.

**SEIZURE OF DEFENDANT**

**{11}** We begin our analysis with the initial detention of Defendant during the execution of the search warrant. The text of the warrant limited the search to:

> Joseph Sandoval . . . and 1822 Hammett St. Clovis, New Mexico, a single family dwelling located to the north of a blue and white single wide trailer house inside a fenced area. The residence of Joseph Sandoval, is also a single wide trailer house that has a white fence in front of it. The house is white with an off white trim around it and has a large wood and metal barn behind the residence. The area to be searched includes all buildings, outbuildings, and vehicles located within the curtilage of the property surrounding the residence. The blue and white trailer house is believed to be the residence of Sandoval's father and will not be searched.

Defendant was neither named in the warrant, nor did the district court find that Defendant was on the property to be searched. As such, the text of the warrant did not provide the police with the explicit authority to seize and search Defendant. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394 n.7 (1971) ("[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant."). Thus, the initial seizure of Defendant required an alternative justification separate from the text of the search warrant. "Warrantless seizures are presumed to be unreasonable and the State bears the burden of proving reasonableness." *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025.

**{12}** In *Michigan v. Summers*, 452 U.S. 692 (1981), the United States Supreme Court held, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705 (footnotes omitted). Detention of those present during the execution of a warrant promotes legitimate law enforcement interests, including "(1) preventing flight in the event that incriminating evidence is found, (2) minimizing the risk of harm to [law enforcement] officers, and (3) facilitating the orderly completion of the search." *State v. Madsen*, 2000-NMCA-050, ¶ 15, 129 N.M. 251, 5 P.3d 573 (alteration in original) (internal quotation marks and citation omitted).

**{13}** In *Graves*, we addressed whether the detention of a non-resident at a home described in a search warrant was permissible. 119 N.M. at 92, 888 P.2d at 974. We held that a visitor's mere presence was not sufficient to justify the detention or search of the visitor. *Id.* at 93, 888 P.2d at 975.

4

We described the requirement as "presence plus." *Id.* We stated that "in order to justify the detention of visitors there must be facts present that would render it reasonable under the circumstances." *Id.* at 94, 888 P.2d at 976; *State v. Cassola*, 2001-NMCA-072, ¶ 14, 130 N.M. 791, 32 P.3d 800 ("[O]fficers may not lawfully detain non-residents on the premises during a search pursuant to a warrant unless the officers have a reasonable basis to believe that the non-resident has some type of connection to the premises or to criminal activity." (internal quotation marks and citation omitted)); *see also State v. Martinez*, 1996-NMCA-109, ¶ 34, 122 N.M. 476, 927 P.2d 31 (holding that officers cannot detain a non-resident who is present during a drug raid on a home on the basis of his mere presence).

{14}   *Summers* and *Graves* are not factually identical to the case before us. *Summers*, 452 U.S. at 693, dealt with the resident of the premises to be searched, and *Graves*, 119 N.M. at 91, 888 P.2d at 973, involved a visitor inside the premises being searched. Defendant was neither. He was, however, twenty feet from the house to be searched, and Officer Hengst thought Defendant was located on the property to be searched. At the time of the initial seizure, police did not know who Defendant was, or whether he had any connection to the criminal activity described in the warrant. Furthermore, the search warrant included a "no-knock provision approved for officer safety." The affidavit in the warrant included information on the possible presence of narcotics, weapons, and "multiple cameras surrounding [the] residence." Additionally, police had information that the subject of the warrant "was not afraid to shoot someone if necessary." The officers in this case were entering a potentially volatile situation with substantial risks to their safety.

{15}   In the circumstances of this case, we conclude it was reasonable for the police to temporarily seize and detain Defendant to determine his identity and connection to the property to be searched and to protect the safety of the officers and anyone else present. *Summers*, 452 U.S. at 702-03. We add that the seizure and detention must be "for the period of time required and in the manner necessary" to accomplish these purposes. *People v. Glaser*, 902 P.2d 729, 740 (Cal. 1995). Defendant does not challenge the manner in which he was detained, but he does challenge the length of his detention, which we now address.

## LENGTH OF DEFENDANT'S DETENTION

{16}   Defendant next argues that his detention of fifteen minutes during the execution of the warrant was unreasonable. We agree with Defendant that an otherwise lawful seizure can become unreasonable if police fail to "pursue[] a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). We have also specifically held that *Summers* does not authorize the prolonged detention of a non-resident who is merely on the premises to be searched and has no connection to the underlying criminal activity. *Graves*, 119 N.M. at 94, 888 P.2d at 976.

{17}   A "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see also Graves*, 119 N.M. at 94, 888 P.2d at 976 (determining

5

whether a detention is reasonable requires examining "whether the officers diligently pursued a means of investigation that would dispel or confirm their suspicions quickly" (internal quotation marks and citation omitted)). We look to see "'[W]hether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *State v. Cohen*, 103 N.M. 558, 561, 711 P.2d 3, 6 (1985) (alteration in original) (quoting *Sharpe*, 470 U.S. at 675-76). We "consider the law enforcement purposes being served as well as the time reasonably needed to effectuate their purposes." *Id.* We are careful not to engage "unrealistic second-guessing" when determining the reasonableness of the length of a detention. *Sharpe*, 470 U.S. at 686.

**{18}** We conclude that Defendant's fifteen-minute detention was reasonable under the circumstances. Defendant was seized at the inception of the execution of the warrant. After searching the home for fifteen minutes, Officer Hengst immediately investigated Defendant who was outside, lying on the ground, and "unsecured." Nothing in the record indicates that Officer Hengst specifically, nor the police generally, were not diligent in executing the warrant and securing the premises. It is unrealistic to require police officers to determine the identity and connection, if any, of persons located on or in close proximity to the property to be searched before they secure the premises, particularly where drugs and weapons may be the subject of the search. As the court in *Cotton v. State*, 872 A.2d 87, 92-93 (Md. 2005) reasoned:

> It really cannot be otherwise. The police do not know who may be at the scene when they arrive. The people they find there, in or on the property to be searched, are not wearing identifying labels–supplier, customer, processor, bodyguard, innocent bystander. It would be decidedly *unreasonable* to expect the police simply to give a friendly greeting to the folks there and proceed to search the house without another thought as to who those people are or what they may do.

**{19}** Additionally, this case is decidedly different than *Graves*. In *Graves*, police unreasonably detained the defendant for at least thirty minutes *after* they had determined he had no connection to the underlying criminal activity. 119 N.M. at 94-95, 888 P.2d at 976-77. In this case, the police had not established whether Defendant was a resident of 1822 Hammett Street, or whether he had any connection to the purpose of the warrant prior to the fifteen-minute detention.

**{20}** We cannot say that the police acted unreasonably in detaining Defendant for fifteen minutes.

**PAT-DOWN SEARCH OF DEFENDANT**

**{21}** Defendant challenges the subsequent pat-down search of his person. A frisk for weapons first requires that an officer have a sufficient degree of articulable suspicion that the person being frisked is both armed and dangerous. *Vandenberg*, 2003-NMSC-030, ¶ 22. "[W]e must balance the threat posed to officer safety under the circumstances, against the individual's right to personal security free from arbitrary interference by law officers." *Id.* ¶ 23 (internal quotation marks and citation omitted).

**{22}** The district court found the pat-down search of Defendant reasonable because "[Defendant's] knife was plainly visible in his back pocket." Defendant insists Officer Hengst discovered the knife after he initiated the pat-down search. Because an officer's justification for a pat-down search must exist at the search's inception, Defendant argues Officer Hengst did not have the requisite justification necessary to pat Defendant down. Defendant's argument requires us to ignore our standard of review. Substantial evidence and reasonable inferences from that evidence support the district court finding that the knife was plainly visible in Defendant's jacket pocket because Defendant was lying down on the ground on his stomach when Officer Hengst arrived.

**CONCLUSION**

**{23}** For the foregoing reasons, we affirm the district court order denying Defendant's motion to suppress.

**{24}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____
**ROBERT E. ROBLES, Judge**


_____
**LINDA M. VANZI, Judge**



**Topic Index for _State v. Winton_, No. 28,276**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-NM | New Mexico Constitution, General |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-AW | Affidavit for Search Warrant |
| CA-CY | Custody |
| CA-MR | Motion to Suppress |
| CA-PW | Plain View |
| CA-SZ | Search and Seizure |
| CA-SR | Search Incident to Arrest |
| CA-SW | Search Warrant |
| CA-WA | Warrantless Arrest |
| CA-WS | Warrantless Search |