**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-115

Filing Date: October 3, 2012

Docket No. 30,255

STATE OF NEW MEXICO,

       Plaintiff-Appellant,

v.

JOHN O. HAMILTON, III,

       Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Jacqueline L. Cooper, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

**{1}**    The question in this case is whether a warrant authorizing the search of a residence also authorizes the search of an independently occupied guesthouse located in the backyard of that residence. Agreeing with the district court that the warrant did not state with sufficient particularity that the separate residence of Defendant was a place to be searched, we affirm.

1

## I. BACKGROUND

**{2}** Defendant was charged with drug trafficking, possession of a controlled substance, and possession of drug paraphernalia. The charges arose out of an investigation by Santa Fe Police in which the police initiated three controlled buys with a confidential informant (CI). Based upon information gained in the investigation, the police requested a warrant to search a home located at 226 Artist Road in Santa Fe, New Mexico, where the CI had completed the controlled buys from Defendant and where the officers had conducted independent surveillance.

**{3}** A warrant was issued that described the place to be searched as "a residence . . . located at 226 Artist Road[,] Santa Fe, New Mexico 87501 along with surrounding curtilage." The residence is described as

> a red stucco single level home with turquoise trim. The residence has an approximate three foot rock wall facing Artist Road. The front door faces south and is under a covered porch. The porch has a single turquoise viga in its center. The driveway entrance which is off Artist Road has stone pillars on each side.

**{4}** Officers executed the warrant at ten o'clock on a Wednesday morning, entered the residence, and cleared it for occupants. Shortly after their entry into the residence, the officers witnessed Defendant and his brother exiting a detached guesthouse located in the backyard area of the main house. We hereafter refer to the detached building as the "guesthouse" and the house that was referred to in the warrant as the "main house." Officers detained the two men and sent drug-sniffing dogs into the main house and guesthouse. The dogs did not alert to any location in the main house but did alert in the guesthouse. The officers removed the dogs and began a search of both the main house and guesthouse. The officers found the evidence which gave rise to the charges against Defendant in the guesthouse.

**{5}** Defendant filed a motion to suppress the evidence in district court, arguing that the search of the guesthouse violated his right to be free from unreasonable search and seizure. He argued that the warrant did not state with particularity the guesthouse as a place to be searched, and therefore, the warrantless search of his residence required suppression of all the evidence found therein. The State argued that the guesthouse was merely an extension of the main house and included in the scope of the warrant as within the curtilage of the main house.

**{6}** At the hearing on Defendant's motion to suppress, the following evidence was provided concerning the guesthouse. It is located in the backyard of the main house a few feet from the deck attached to the back of the main house. A stucco wall surrounds both the guesthouse and the main house. The defense's investigator testified that the guesthouse could be rented out separately from the main house and that it contained everything one

2

would need to live separately from the main house.  The guesthouse has its own kitchen with a stove, oven, and refrigerator as well as a bathroom and sleeping area.  The guesthouse also has separate utilities from the main house, including separate cable and telephone access, and a separate locking mechanism from the main house.  At the time the warrant was executed, there were no separate address numbers on the guesthouse.

**{7}**     The main house and the guesthouse are owned as a common unit, and when the search warrant was executed, the properties were owned by the estate of Defendant's mother and controlled by her former husband, Defendant's father, who was personal representative of her estate.  The guesthouse had almost always been rented out to tenants in the past, and it used to have a different mailbox with the notation of 226B.  At the time of the hearing on Defendant's motion, Defendant's father owned the properties, and his father testified that he understood the main house and guesthouse could be sold separately.

**{8}**     Defendant's father testified that the guesthouse was not being rented at the time  the warrant was executed but that Defendant was "sort of renting it."  He also testified that Defendant lived in the guesthouse and did not occupy bedrooms in the main house.  However, Defendant's father retained access to the guesthouse, and Defendant also had access to the main house where Defendant's father lived.

**{9}**     Officer Lucero testified that the CI had not informed the officers of the separate guesthouse in the backyard and that the officers were not aware of the guesthouse until they executed the warrant. He also testified that there was no reason that the officers were unable to obtain a separate warrant to search the guesthouse at the time they discovered its existence.

**{10}**     The district court concluded that the guesthouse was not within the curtilage of the main house and that no exceptions excused the failure to obtain a warrant for the search of the guesthouse.  Accordingly, the district court ruled that all evidence arising from the warrantless search of the guesthouse must be suppressed. The State appeals the suppression order pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972).

## II.    ANALYSIS

**{11}**     The State argues on appeal:  (A) that the district court erred in concluding that the guesthouse was not within the curtilage of the main house; and (B) that even if the search warrant did not state with particularity that the guesthouse was a place to be searched, the exceptions used by this Court in *State v. Sero*, 82 N.M. 17, 474 P.2d 503 (Ct. App. 1970), establish that the search was nonetheless valid.

**{12}**     A motion to suppress evidence raises issues of both fact and law.  *See State v. Winton*, 2010-NMCA-020, ¶ 8, 148 N.M. 75, 229 P.3d 1247.  We employ a two-part standard of review:  first we determine whether the findings of fact of the district court are supported by substantial evidence, and second, we engage in a de novo review of the

application of the law to those facts. *See State v. Pablo R.*, 2006-NMCA-072, ¶ 9, 139 N.M. 744, 137 P.3d 1198. When we review for substantial evidence, "all facts are viewed in a light most favorable to the prevailing party. Furthermore, all reasonable inferences in support of the court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *Winton*, 2010-NMCA-020, ¶ 8 (internal quotation marks and citations omitted).

**{13}** In order to conduct a valid search of a home, officers must have either a valid warrant or act pursuant to one of the recognized exceptions to the warrant requirement. *See State v. Malloy*, 2001-NMCA-067, ¶¶ 9-10, 131 N.M. 222, 34 P.3d 611 (stating that a search pursuant to a valid search warrant establishes that the search was constitutionally reasonable); *State v. Bond*, 2011-NMCA-036, ¶ 11, 150 N.M. 451, 261 P.3d 599 (stating that warrantless searches are per se unreasonable, and the State bears the burden of establishing that the search fits into a recognized exception to the warrant requirement); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); N.M. Const. art. II, § 10 ("The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation."). A valid search warrant must state with particularity the place to be searched and the things to be seized. *See* U.S. Const. amend. IV; N.M. Const. art. II, § 10; *Sero*, 82 N.M. at 21, 474 P.2d at 507.

> The manifest purpose of th[e] particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Likewise, "when law enforcement wishes to search two houses or two apartments, it must establish probable cause as to each." *United States v. Cannon*, 264 F.3d 875, 879 (9th Cir. 2001).

**{14}** We conclude that Defendant adequately preserved his challenge to the search of the guesthouse under both the New Mexico and federal constitutions. *See State v. Gomez*, 1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1. We note that New Mexico does not recognize the "good faith" exception that the federal courts have recognized with respect to search warrants. *See State v. Gutierrez*, 116 N.M. 431, 437-47, 863 P.2d 1052, 1058-68 (1993) (stating that the good faith exception exempts suppression of evidence obtained in a search pursuant to an invalid warrant if the officer acted objectively reasonable in reliance on the

4

invalid warrant, and concluding that this exception is inconsistent with the protections of the New Mexico Constitution). Assuming, without deciding, that the officers may have properly searched the guesthouse pursuant to the federal good faith exception under the Fourth Amendment analysis, we conclude that the search nonetheless violated the protections of Article II, Section 10 of the New Mexico Constitution for the following reasons. *See* N.M. Const. art. II, § 10.

**A.      The Guesthouse Was Not Part of the Curtilage of the Main House**

**{15}**    The warrant does not mention the separate guesthouse, and the officer who signed the affidavit in support of the warrant testified that the officers were not aware of its existence at the time the warrant was requested. However, the State contends that the proximity of the guesthouse to the main house and evidence supporting access to the guesthouse by Defendant's father is sufficient to bring it within the curtilage of the main house. Accordingly, the State contends, the guesthouse is included within the scope of the warrant.

**{16}**    "Generally, the curtilage is the enclosed space of the grounds and buildings immediately surrounding a dwelling house." *State v. Sutton*, 112 N.M. 449, 452, 816 P.2d 518, 521 (Ct. App. 1991).

> At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of [the] home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.

*Id.* (internal quotation marks and citations omitted).

**{17}**    We consider several factors in determining whether a specific location is within the curtilage of a residence, specifically: "(1) the proximity of the location to the home; (2) whether the same enclosure surrounding the home also encloses the location; (3) the uses to which the location is put; (4) the steps taken to protect the location from observation by passersby." *Id.* The curtilage is considered to be an extension of the home, to which the Fourth Amendment protection should extend, because although that area may be outside the boundaries of the walls of the home, the intimate activities of a man's home and privacies of life occur there. *See id.*

**{18}**    The facts viewed in the light most favorable to the court's ruling, and ignoring all evidence and inferences to the contrary, support that the guesthouse is not within the curtilage of the main house, but rather, is a separate residence requiring independent

5

probable cause for its search. While the guesthouse is in close proximity to the main house, within the same enclosure, and owned as a part of the same property as the main house, the evidence supports a finding that Defendant was occupying the guesthouse as a separate residence to sufficiently divorce the guesthouse from being included in the curtilage of the main house. *See Cannon*, 264 F.3d at 879-80 (concluding that an apartment in a rear building of a residence was a separate dwelling from the residence and therefore required the issuance of a separate warrant because the tenant possessed a reasonable expectation of privacy and the affidavit in support of the warrant did not establish probable cause to search his residence). By definition, a separate and independent residence cannot be part of the curtilage of another residence, because each separate residence contains the intimate activities of its own respective occupants. *See Sutton*, 112 N.M. at 452, 816 P.2d at 521 (defining the curtilage as a place to where the intimate activities of the home extend). The guesthouse was a self-sufficient residential structure, and the evidence supports a finding that Defendant was occupying the guesthouse as his residence. *See id.* ("We also note that a decision regarding the extent of a curtilage is a question of fact and for that reason we will not reverse the [district] court . . . if the decision is supported by substantial evidence." (citations omitted)).

**{19}** The State argues that the testimony of Defendant's father that he and his son both had access to the main house and the guesthouse, establishes that the guesthouse was not a separate residence entitling Defendant to an independent reasonable expectation of privacy. However, irrespective of any rights of mutual access between the two homes, the evidence, viewed in the light most favorable to Defendant, supports a finding that Defendant used the guesthouse as his own residence. *See, e.g.*, *State v. Diaz*, 1996-NMCA-104, ¶¶ 16-19, 122 N.M. 384, 925 P.2d 4 (concluding that an adult child's father did not have authority to consent to the warrantless search of his son's bedroom in the house owned by the father because the son maintained "far greater access and control and a superior privacy interest" to his personal bedroom than over the common use areas in the home). The mere fact that an adult child lives in close proximity to his parents and they allow mutual access to each other's home, does not establish that the two homes are no longer separate.

**{20}** Therefore, although we recognize that the guesthouse was not being used as a rental property per se at the time the search warrant was executed, the evidence supports a finding that the guesthouse was being used as a separate residence by Defendant and that Defendant was entitled to a reasonable expectation of privacy in the home, separate and distinct from whatever intent his father possessed. *See State v. Monteleone*, 2005-NMCA-129, ¶ 9, 138 N.M. 544, 123 P.3d 777 ("Among the areas afforded the greatest protection by [the Fourth Amendment and Article II, Section 10] is a person's home."); *State v. Devine*, 768 P.2d 913, 915-16 (Or. 1989) (stating that if living quarters separate from a main property are really a separate household, then the separate premises are not covered by a search warrant to search a main house, and that "[a] warrant authorizes the search of a particular place. That authorization does not extend to other places, even when they are somewhat like the place whose search is authorized and their existence was not anticipated by the officers"). Further, we note that the recognition of the "curtilage" doctrine has been adopted in order to *extend*

6

Fourth Amendment protection to areas in which an individual is entitled to privacy in the same manner as his home. *See Sutton*, 112 N.M. at 452, 816 P.2d at 521. We decline to use this concept to instead, *infringe upon* an individual's privacy rights in his separate home. *See State v. Gebaroff*, 939 P.2d 706, 710 (Wash. Ct. App. 1997) ("[P]robable cause to search outbuildings does not furnish probable cause to search a house and vice versa, if the outbuildings are under the control of other persons.").

## B. The *Sero* Decision Regarding Multi-Unit Properties Is Not Applicable

**{21}** The State also argues that even if the warrant did not state with particularity the guesthouse as an area to be searched, that exceptions relied upon by us in *Sero* apply in this case, thereby validating the search of Defendant's residence. *Sero* is inapplicable here because it dealt with a single building containing two separate units and not multiple residences occupied by different individuals on one piece of property. *See Sero*, 82 N.M. at 22, 474 P.2d at 508 ("The cases cited by [the] defendant concerning multiple buildings on the premises do not require discussion because of the facts. Here, there is no question that we have only one building."). Our decision in *Sero* was predicated on the conclusion that the search of the entire multi-unit building was reasonable because of common occupancy, suspicion of the entire building, and the fact that the multi-unit characteristics of the building were not externally apparent. *See id.* *Sero* did not address a situation where two independent residences, separately occupied, are located upon the same property.

**{22}** The officers conducted a warrantless search of the guesthouse and did not act pursuant to any recognized exception to the warrant requirement. Accordingly, we conclude that the search of the guesthouse violated Defendant's right to be free from unreasonable search and seizure under Article II, Section 10 of the New Mexico Constitution. All evidence obtained from that search was therefore properly suppressed by the district court. *See State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 17, 130 N.M. 386, 25 P.3d 225 ("The exclusionary rule requires suppression of the fruits of searches and seizures conducted in violation of the New Mexico Constitution.").

## III. CONCLUSION

**{23}** The order of the district court is affirmed.

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**J. MILES HANISEE, Judge**

7

**Topic Index for** *State v. Hamilton*, **No. 30,255**

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Standard of Review

**CONSTITUTIONAL LAW**
Fourth Amendment
Suppression of Evidence

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Motion to Suppress
Search and Seizure
Warrant
Warrantless Search