This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41814**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOHN SLONIKER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Jared G. Kallunki, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Tyler Sciara, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant John Sloniker appeals his conviction for possession of a controlled substance in violation of NMSA 1978, Section 30-31-23(A) (2019, amended 2021).[1]

_____

[1] Section 30-31-23(A) was amended after the incident underlying Defendant's conviction occurred and does not affect this appeal. *See State v. Morales*, 2010-NMSC-026, ¶ 8, 148 N.M. 305, 236 P.3d 24 ("[A] statute is applied prospectively unless the [L]egislature has made clear its intention to apply it

Defendant was detained and searched while officers searched another person's residence pursuant to a warrant in which Defendant was not named. Defendant argues that (1) the State failed to meet its burden of proving that his detention was reasonable, and (2) the ensuing search was therefore tainted. The district court denied his motion to suppress the drugs found on his person during that search.

**BACKGROUND**

{2}     On January 8, 2020, officers executed a search warrant for the residence of a Gabriel Lara, a felon believed to be in possession of two firearms and for whom there was an active arrest warrant for fleeing a police officer the previous week. Defendant was neither named in the search warrant nor a resident of the address to be searched. The remaining details are based solely on testimony given at Defendant's suppression hearing by Sergeant Alex Barleen, who was not present when execution of the search warrant began or when Defendant was initially detained.

{3}     Sergeant Barleen estimated that he arrived approximately forty-five minutes after officers first arrived at Lara's residence to execute the search warrant. When Sergeant Barleen first saw Defendant, he was already in handcuffs and detained in the back of a police vehicle. In response to both the State's and Defendant's questioning, Sergeant Barleen answered that he did not know if Defendant was inside or outside the residence when he was detained; how long Defendant had been detained; where Defendant was first contacted by police; or if he (Sergeant Barleen) had records to reflect the details of the investigation that night. He testified that the only reason Defendant had been detained was because he "was at a residence that [officers] had a search warrant for." Although Sergeant Barleen thoroughly explained how a search warrant is typically executed, including how and why individuals present are detained, he did not testify about how or why *Defendant* was detained.

{4}     After Sergeant Barleen arrived at the scene, he spoke with Defendant—who was handcuffed and sitting in the back of a police vehicle—read him his *Miranda* rights, searched Defendant and Defendant's vehicle after he consented, and found methamphetamines. Defendant was charged with possession of a controlled substance in violation of Section 30-31-23(A).

{5}     Before trial, Defendant moved to suppress the methamphetamine, arguing that the detention was illegal and that his consent to Sergeant Barleen's search was not voluntary. The district court denied Defendant's motion to suppress. The district court based its denial on two findings: (1) that officers "validly asserted the authority laid out in *State v. Winton*, in briefly detaining Defendant to properly effectuate the search of the premises," 2010-NMCA-020, 148 N.M. 75, 229 P.3d 1247; and (2) that Defendant's consent was valid and not coerced. Defendant entered a conditional guilty plea,

retroactively." (internal quotation marks and citation omitted)). All references to Section 30-31-23(A) in this opinion reference the 2019 amendment of the statute, which was in effect at the time of the incident.

preserving his right to appeal alleged search and seizure violations. Defendant appeals, advancing only his argument that the detention was illegal.[2]

## DISCUSSION

**{6}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "We review factual determinations for substantial evidence and legal determinations de novo." *Id.*

**{7}** The Fourth Amendment of the United State Constitution protects an individual from unreasonable search and seizure. U.S. Const. amend. IV.[3] Under the Fourth Amendment, police may detain a nonresident who is present at a home during an otherwise valid search of a residence when they have "a reasonable basis to believe that the non[]resident has some type of connection to the premises or to criminal activity." *State v. Graves*, 1994-NMCA-151, ¶ 8, 119 N.M. 89, 888 P.2d 971. A connection to the residence must be more than mere presence. *See id.* ¶ 17 ("[M]ere presence does not justify the arrest or detention of a person, other than the resident, at a residence lawfully being searched." (internal quotation marks and citation omitted)). "In examining whether a detention is reasonable under the circumstances, a court must determine, looking at the totality of the circumstances, whether the officers diligently pursued a means of investigation that would dispel or confirm their suspicions quickly." *Id.* ¶ 18 (internal quotation marks and citation omitted). An "otherwise lawful seizure can become unreasonable if police fail to pursue a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Winton*, 2010-NMCA-020, ¶ 16 (alteration, internal quotation marks, and citation omitted). The State bears the burden of proving that the warrantless seizure was reasonable. *See State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025 ("Warrantless seizures are presumed to be unreasonable and the State bears the burden of proving reasonableness.").

**{8}** Limited exceptions to the rule that the "traditional justification for detention is probable cause" exist. *Graves*, 1994-NMCA-151, ¶ 9. Among them is, first, a *Terry* stop, which allows a brief investigatory detention and pat-down search of an individual based on reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 29-31 (1968); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) (requiring reasonable suspicion for *Terry* stops). Second is the *Summers* exception, which allows detention of a resident of the

---

2On appeal, Defendant has abandoned his argument regarding consent to be searched. Thus, we do not address it.

3Defendant did not argue that his right to be free from unreasonable search and seizure under Article II, Section 10 of the state constitution was violated, so we analyze his appeal under the Fourth Amendment only. *See State v. Gomez*, 1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1 (explaining that a party must preserve state constitutional arguments by asserting the principle and developing the facts below). Furthermore, the two cases on which both parties rest their arguments, *Winton*, 2010-NMCA-020, and *State v. Graves*, 1994-NMCA-151, 119 N.M. 89, 888 P.2d 971, are both based on the Fourth Amendment and not the state constitution. The parties therefore do not advance a state constitutional analysis, and we do not endeavor to undertake one.

premises being searched as long as the detention is justified by articulable facts. *Michigan v. Summers*, 452 U.S. 692, 699-700 (1981). However, the *Summers* exception to the probable cause requirement is limited to residents and "cannot reasonably be extended to those merely present on the premises." *Graves*, 1994-NMCA-151, ¶ 12 (discussing the *Summers* exception).

**{9}** In *Graves*, this Court adopted the "presence plus" approach, which prohibits the detention of nonresidents during residence searches unless there are articulable facts "that would render a detention reasonable under the circumstances." *Id.* ¶ 14; *see also Winton*, 2010-NMCA-020, ¶ 13 ("[A] visitor's mere presence [is] not sufficient to justify the detention or search of the visitor."); *State v. Cassola*, 2001-NMCA-072, ¶ 14, 130 N.M. 791, 32 P.3d 800 ("[O]fficers may not lawfully detain non[]residents on the premises during a search pursuant to a warrant unless the officers have a reasonable basis to believe that the non[]resident has some type of connection to the premises or to criminal activity." (internal quotation marks and citation omitted)); *State v. Martinez*, 1996-NMCA-109, ¶ 34, 122 N.M. 476, 927 P.2d 31 (same).

**{10}** Defendant argues on appeal that his detention was illegal and that the evidence gained from the search of his person should have been suppressed. Leaning primarily on the *Graves* holding that "mere presence does not justify the arrest or detention of a person, other than the resident, at a residence lawfully being searched," 1994-NMCA-151, ¶ 17 (internal quotation marks omitted), Defendant argues that the State did not meet its burden of proving that his detention during the search of Lara's home was based on anything more than mere presence. Defendant points out that the only evidence the State presented related to Defendant's detention was the testimony of one witness, Sergeant Barleen, who was not present when Defendant was detained. Defendant further asserts that the district court's reliance on *Winton* as providing authority for the detention was mistaken. *See generally Winton*, 2010-NMCA-020.

**{11}** The State argues that the district court did not err by finding Defendant's detention reasonable. The State primarily rests its argument on the holding in *Summers*: "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705 (footnote omitted). Both the State and the district court heavily rely on this proposition, as cited in *Winton*. *See* 2010-NMCA-020, ¶ 12. The State distinguishes *Graves* by stating that the *Graves* detention was unreasonable because the officers detained the defendant even after determining a lack of connection to the underlying activity. *See Winton*, 2010-NMCA-020, ¶¶ 19-20 (discussing how the facts in *Winton* differ from those in *Graves*). The State argues that Defendant's detention was justified at its inception due to concerns regarding officer safety because the warrant was for a felon in possession of firearms and was executed in the late evening hours. *See id.* ¶ 17 (determining if a detention is reasonable requires examining whether "the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (internal quotation marks and citation omitted)). The State further argues that nothing in

the record indicates that police were not diligent in their investigation of Defendant. We disagree and conclude that the State did not meet its burden of proof.

**{12}** At the suppression hearing, the State presented one witness, Sergeant Barleen, to testify about Defendant's seizure. Sergeant Barleen's testimony concerned his observations once he arrived at the scene, approximately forty-five minutes after the search warrant was executed and when we must assume—given the absence of evidence to the contrary—Defendant was initially detained. Sergeant Barleen's testimony did not include statements about officers' actions at the inception of the detention beyond the fact that detention must have occurred, considering Defendant was handcuffed and in the back of a patrol vehicle when Sergeant Barleen arrived.

**{13}** The State did not show that Defendant was connected to or even suspected to be connected to the items sought in the search warrant, as required for detention of a nonresident. *See Graves*, 1994-NMCA-151, ¶ 17 ("[The d]efendant was not shown to have any connection with the [illegal items] discovered on the searched premises, and there is no showing the officers had grounds to suspect such a connection."). As in *Graves*, the State provided no circumstances here "to give rise to a reasonable suspicion Defendant was involved in criminal activity" and no "articulable reason . . . why Defendant was detained" for up to forty-five minutes while the search was conducted. *See id.* The State presented no evidence that Defendant attempted to flee, made furtive gestures or sudden movements toward a weapon, threatened anyone, or resisted detention. *See id.* ¶ 19. The State presented "no testimony that the police feared Defendant or feared that evidence would be destroyed by Defendant, nor was Defendant the target of the search warrant." *See id.*

**{14}** Furthermore, the argument that Defendant's lengthy detention was reasonable because officers had not yet determined whether he was connected to the premises or criminal activity ignores the fact that the officers also had the responsibility to "diligently pursue[] a means of investigation that would dispel or confirm their suspicions quickly." *Id.* ¶ 18 (internal quotation marks and citation omitted). So, even if the State *had* provided evidence justifying Defendant's initial detention, it did not offer evidence of officers' diligence thereafter in determining Defendant's connection to the premises or criminal activity, as required by *Graves*. *See id.*

**{15}** To illustrate, in *Winton*, officers were considered to have acted diligently (and therefore reasonably) when they detained the defendant for just fifteen minutes before determining whether the defendant was connected to the underlying criminal activity. 2010-NMCA-020, ¶¶ 17-18. However, in *Graves*, officers were considered to *not* have acted diligently (or reasonably) when they detained the defendant for approximately thirty minutes: "By detaining [the d]efendant for approximately thirty minutes, sitting him on the couch, and handcuffing him, the police did not perform or permit a speedy, focused investigation to confirm or dispel individualized suspicion of criminal activity." 1994-NMCA-151, ¶ 20; *cf. State v. Werner*, 1994-NMSC-025, ¶ 20, 117 N.M. 315, 871 P.2d 971 ("The concept of diligence has an aspect of speed or haste."). Here, the State provided no evidence that the officers acted diligently in investigating Defendant in a

manner that would "dispel or confirm their suspicions quickly." *See Graves*, 1994-NMCA-151, ¶ 18 (internal quotation marks and citation omitted).

{16}     The State failed to meet its burden to prove that Defendant was detained for any reason other than "simply because he was found on the premises." *See id.* ¶ 8. The State aptly points out that it is an officer's actions "at [the] inception," *see Winton*, 2010-NMCA-020, ¶ 17, of a detention that determines whether such a detention is reasonable, but, crucially, the State neglected to provide evidence of the inception of Defendant's detention. In light of the well-established rule that a person cannot be detained during the search of another's home merely because he was present, it is consequential that the State failed to proffer evidence of articulable reasons for detaining Defendant or that the detention was reasonably justified at its inception. Furthermore, even if the initial detention was valid, the State failed to sufficiently demonstrate that the detention's forty-five-minute duration was necessary for officers to diligently dispel their suspicions regarding Defendant or his potential connection to criminal activity. *See Graves*, 1994-NMCA-151, ¶ 18. We therefore agree with Defendant that the State did not provide sufficient evidence to establish the reasonableness of either Defendant's initial detention or its duration. As such, Defendant's motion to suppress should have been granted.

**CONCLUSION**

{17}     For the reasons set forth, we reverse and remand to the district court to vacate Defendant's conviction.

{18}     **IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**